NEW YORK LIFE INSURANCE COMPANY *v.*
CALEB D. ROGERS.
[No. 29, October Term, 1928.]

*Decided November 22nd, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John T. Tucker,* with whom were *Louis H. Cooke* and *Keech, Deming & Carman* on the brief, for the appellant.

*W. Calvin Chesnut,* with whom was *Joseph L. Donovan* on the brief, for the appellee.

90

URNER, J., delivered the opinion of the Court.

The principal question of law, at the trial of this suit on a life insurance policy for $2,000, was whether its delivery by the agent of the insurer to the beneficiary, who paid the premium, was rendered ineffective by the fact that an endorsement on the policy, stating truthfully that the insured had no other application for life insurance then pending, was not signed by him personally but by the beneficiary at the agent's suggestion. This was not a defense upon which the insurance company originally relied. In its letter refusing to pay the amount of the policy after the death of the insured, and enclosing a check, which was not accepted, for the repayment of the premium, the reasons assigned for the rejection of the claim were that the statement on the application of the insured as to the nature and place of his employment was incorrect, and that the initial premium was not paid or the policy delivered in his lifetime. The first of those objections was abandoned as erroneous, and as to the second the jury found in favor of the beneficiary on the evidence. But the fact that he had signed the endorsement to which we have referred, in the name of the insured, was proved by the plaintiff himself when testifying in support of his claim under the policy.

The application for the insurance was signed by the insured and named as beneficiary his brother, the plaintiff, with whom he resided. It was understood that the plaintiff was to pay the premiums. The insurance was proposed by the insurer's agent with that understanding. When the policy was received by the agent from his company, he notified the plaintiff of that fact by telephone, and stated that he had an additional policy for $3,000, by which, if accepted, the insurance applied for would be increased to $5,000. The plaintiff told the agent that he would be ready to receive and pay for the $2,000 policy on the following day, and that the offer of the other policy would be taken under consideration. The insured himself was present at the office of his brother, the beneficiary, at the time of the telephone interview just related. In pursuance of the appointment

thus made, the agent visited the plaintiff's office the next day, May 21st, 1927, with the two policies, and delivered the one for $2,000 to the plaintiff upon receipt of his check for the premium which it specified. The other policy was declined.

The date of the application for the insurance was April 21st, 1927. When the policy was presented for delivery on May 21st, there was attached to it an "amendment" of the application stating: "I hereby certify that no other application for insurance and no application for the reinstatement of any insurance on my life is now pending." It was suggested by the plaintiff that his brother's signature could be obtained when he returned the following Monday, and that the transaction be postponed until that time. But the agent said that it would be satisfactory for the plaintiff to sign his brother's name to the amendment, which he proceeded to do, and the agent attested the signature. The check for the premium, which the agent then accepted, was cashed in due course, and no offer to repay the amount was made until July 7th, 1927. The death of the insured was discovered, and promptly reported to the insurance company, when, on May 26th, 1927, his body was found in Baltimore Harbor not far from his submerged automobile.

It was proposed that a verdict be directed for the defendant upon the theory that the delivery of the policy was nugatory. The trial court properly refused to grant such an instruction. Although the amendment of the application was prepared with a view to its being signed by the insured, its practical purpose was accomplished by the verification suggested and obtained by the agent to whom the policy was entrusted for delivery. The certification was by a premium paying party who had knowledge of the fact of which the defendant wished to be assured. No question has been raised as to the accuracy of the statement thus certified. The agent apparently believed, and the evidence admits of the inference, that the plaintiff had the requisite authority to certify in his brother's name to the statement contained in the amendment. At the trial there was a definite denial by

counsel for the defendant that any question of fraud was involved.

The following printed direction was on the amendment paper: "This requirement must not be changed or modified in any way, but remain as made out by the home office." This was plainly intended to prevent an alteration of the statement which the home office had prepared to the effect that the insured had no other application for insurance then pending. No modification of that statement resulted from the act of the beneficiary, at the agent's request, in signing his insured brother's name to the paper. There is no question as to any attempted waiver of any of the policy provisions. The method directed by the agent for the verification of the statement in the amendment was merely incidental to the completion of the insurance contract and did not affect its terms. It was said in *Dulany v. Fidelity & Casualty Co.*, 106 Md. 17: "The policy before us contains the usual provision that no agent has power to change it or waive any of its terms, but this court has several times decided that such a clause must be construed to relate to the provisions of the contract itself after it has gone into effect and not to apply to the conditions which relate to the inception of the contract when it appears that the agent has delivered the policy and received the premiums with full knowledge of the actual situation." In addition to the cases which the court then cited, the principle of its ruling is supported by the later cases of *Forwood v. Prudential Ins. Co.*, 117 Md. 260; *Goebel v. German Amer. Ins. Co.*, 127 Md. 419; *Rhode Island Ins. Co. v. Phelps*, 141 Md. 362; *Great Eastern Casualty Co. v. Schwartz*, 143 Md. 452; and *Travelers Ins. Co. v. Melman*, 147 Md. 459.

There being no conflict in the evidence as to the facts upon which we have concluded that the contract of insurance in this case was legally consummated, the trial court was not only right in refusing to withdraw the case from the jury, but also correctly ruled that the single prayer of the plaintiff was not defective because of its omission to submit any issue relating to the subject of waiver, and because it made a

verdict in his favor depend simply upon a finding that the insured was living and in good health when the policy was delivered. Three prayers of the defendant, which sought to deny the right of the plaintiff to a verdict if the jury should find that the amendment to the application was not signed personally by the insured, were rejected, and we concur in that ruling for the reason already indicated.

There are thirteen exceptions to the admissibility of evidence. The first, second and third were taken because the court sustained objections to questions asked of a witness for the defendant in regard to a conversation with the plaintiff "in connection with the whereabouts of his brother." The conversation was said to have occurred several days after the policy was delivered and before the brother's dead body was found. In ruling on these questions the court said that they would be allowed if counsel for the defendant proffered to prove a statement by the plaintiff, in the conversation referred to, indicating knowledge that his brother was then dead. No such proffer being made, there was no error in the refusal to permit the questions to be asked and answered. Any expression of opinion, as distinguished from an assertion of knowledge on the subject, would have been immaterial.

The fourth, fifth and sixth exceptions refer to the disallowance of questions which sought the opinion of a witness for the defendant as to the probable length of time the body of the insured had been in the water of the harbor. The witness was an undertaker who had examined the body and had testified as to its appearance. There was no proof as to his qualifications to express an admissible opinion upon the subject of the inquiry. His experience in the undertaking business, and his membership in the State Board of Undertakers, may not have involved any observation of the effects of water, under various conditions, upon the bodies of drowned persons, as indicating the approximate time of death. There is no reason to disturb the ruling that the qualification of the witness to express the desired opinion was not sufficiently proved.

By the rulings to which the seventh, eighth and ninth exceptions relate, the court declined to admit evidence that accompanying the policy, when transmitted to the agent, was a memorandum prepared at the cashier's office of the insurance company's Baltimore branch, directing that the attached amendment to the application should be signed by the insured before delivery of the policy. There was no proffer to show that the beneficiary knew of the existence of the memorandum when he signed the amendment for the insured at the agent's instance. The amendment paper itself indicated that it was to be subscribed in the name of the insured, but upon the special facts of the case we have reached and stated the conclusion that the insurer is not entitled to disavow the action of its agent in having the insured person's name signed by the beneficiary to the supplemental statement certifying to the particular and unquestioned fact to which it refers. These exceptions present no ground for reversal. The other evidence exceptions were not pressed.

*Judgment affirmed, with costs.*