ZURICH INSURANCE COMPANY, ET AL. *v.* MON-
ARCH INSURANCE COMPANY OF OHIO

[No. 332, September Term, 1966.]

4

*Decided June 2, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*William A. Ehrmantraut,* with whom were *Donahue, Ehrmantraut, Mitchell & Gleason* on the brief for appellants.

*William H. Clarke,* with whom were *Galiher, Stewart & Clarke* on the brief for appellee.

FINAN, J., delivered the opinion of the Court.

The appellee, Monarch Insurance Company of Ohio (Monarch), issued a liability insurance policy to one William Lee Fuller that was in effect on May 7, 1964, the date of the accident. In the early spring of 1964, the insured, William Lee Fuller, was separated from his wife, Ruby Lee Fuller, and his automobile was in her custody. John Morris Quade, Mrs. Fuller's brother, and his wife temporarily resided with Mrs. Fuller in May of 1964. In the late evening of May 1, 1964, Quade, using the Fuller vehicle, transported Mrs. Fuller, who was expecting a child, to the hospital and thereafter retained custody of the Fuller automobile. Quade had borrowed the automobile on prior occasions and it was understood that he was not to permit other persons to operate the automobile.

On May 7, 1964, Quade drove the Fuller automobile to the home of appellant, Lawrence Wayne Heiston. Heiston requested Quade's permission to use the vehicle and Quade instructed Heiston that permission must come from Mrs. Fuller. Later that evening, while the Fuller automobile was being operated by Heiston, with Donna Wildman, his fiancee, and Quade as passengers, it was involved in a collision. Mr. and Mrs. Fuller both testified that Heiston did not request their permission to operate the vehicle. Heiston, at his deposition, testified under oath that he had telephoned Mrs. Fuller, had spoken with her and had received her permission to operate the vehicle. However, at the trial, Heiston stated that he assumed that Quade had telephoned Mrs. Fuller on the date of the accident requesting permission on his behalf, because Quade had given him the keys

to the automobile, although he, Heiston, had not personally talked to Mrs. Fuller.

On May 8, 1964, Mrs. Fuller was confined in the hospital and was advised of the accident. She in turn notified her husband who notified Monarch. Monarch retained the services of the Roane Company to investigate the accident and the file was assigned initially to Mr. Frank Harrison. He testified as to his efforts to contact Heiston and generally as to the lack of cooperation on the part of Heiston.

At about this time, the operator of the adverse vehicle, Thomas, filed suit against Heiston and Mr. Fuller in the Circuit Court for Prince George's County. Monarch refused to defend Heiston in the action on the ground of non-cooperation and also refused to recognize itself as the primary carrier under its policy. Fuller was never served with process in that action.

Appellant, Zurich Insurance Company (Zurich), defended the suit against Heiston since he had an assigned risk liability policy with that company. Zurich and Heiston then filed an action in the same court against Monarch and Mr. Fuller to recover the amount paid ($4,659.80) after judgment was entered in favor of Thomas against Heiston. When the present suit for a declaratory judgment was filed, Monarch alleged, in addition to asserting the defense of non-cooperation, that Heiston's use of the Fuller vehicle was nonpermissive.

The court entered judgment for Monarch finding that Heiston did not cooperate with the company and that the use of the Fuller vehicle by Heiston was not with the permission of the owner or the owner's agent. The court further found that the provisions of Art. 48A, § 482 Code (1966 Cum. Supp.) did not apply.

The Court is of the opinion that the lower court should be affirmed; however, in doing so we need not, nor do we intend to, go beyond the consideration of the issue of nonpermissive use.

Monarch's policy contains the following pertinent provisions:

"PERSONS INSURED: The following are insureds under Part 1:
(a) with respect to the owned automobile,

    (1)  the named insured and any resident of the
         same household,

    (2)  any other person using such automobile with
         the permission of the named insured, provided
         his actual operation or (if he is not operat-
         ing) his other actual use thereof is within the
         scope of such permission, * * *.

\* \* \*

"DEFINITIONS: Under Part 1:

'NAMED INSURED' means the individual named in
    Item 1 of the declarations and also includes his
    spouse, if a resident of the same household;

\* \* \*

'RELATIVE' means a relative of the named insured
    who is a resident of the same household; * * *."

At the outset it becomes necessary to establish the status of Mrs. Fuller, wife of the "named insured." Mrs. Fuller being the spouse, if she was a resident of the same household, she herself would be a "named insured" within the purview of the policy. The appellee, in its argument, characterizes her as the first permittee contending that because she and her husband had been separated since the January preceding the happening of the accident on May 7, 1964, and he had taken another abode, that she was not a member of his household, within the terms of the policy, at the time of the happening of the accident. The factual situation presented by this case places it somewhere between *American Casualty v. Walzl,* 238 Md. 322, 208 A. 2d 597 (1965) and *Selected Risks v. Miller,* 227 Md. 174, 175 A. 2d 584 (1961). However, in the instant case, the couple later effected a reconciliation and during the period of separation the husband continued to use the address of the residence occupied by the wife as his legal address. We think this places it more in the sphere of *American Casualty* and accordingly adopt the proposition that she was a member of the "named insured's" household. We do think that the lower court correctly concluded (this is implicit in its decision) that Quade, the brother of Mrs. Fuller, had only temporary residence at the Fuller home and accordingly was not a member of the "named

insured's" household within the meaning of the policy. Thus Quade was the first permittee, having secured permission from Mrs. Fuller, a "named insured," to use the automobile for his personal use.

There is a division of authorities on the proposition as to whether when a named insured leaves an automobile with someone for their general use and that person in turn permits its use by another the use is deemed to be with the permission of the named insured. Annot., 4 A.L.R. 3rd 10, 56 *et seq.* (1965). The cases collected in 7 Appleman, Insurance Law and Practice, § 4361, would not include the second permittee within the coverage afforded by the omnibus clause.

Authority to the contrary may be found in the opinion of Judge Winter in *Ohio Casualty Ins. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 238 F. Supp. 706 (D. C. Md. 1965), who considered the status of the second permittee under Maryland law and noted at p. 708:

> "This conclusion leads to additional problems, because there is no direct decision of the Maryland Court of Appeals deciding whether, or under what circumstances, a second permittee becomes an insured under an omnibus clause, although, on facts tantalizingly similar to those found in the case at bar, the Maryland Court of Appeals has found coverage under policy provisions concededly not applicable here, and has declined to rule on whether coverage might have been found on the theory advanced in this case, Melvin v. American Automobile Insurance Company, 232 Md. 476, 194 A. 2d 269 (1963). See also, Hardware Mutual Casualty Company v. Mitnick, 180 Md. 604, 26 A. 2d 393 (1942).

To which we might also add *Selected Risks v. Miller, supra.* Judge Winter continued:

> The function of this Court, therefore, is to make an informed prediction of what the Maryland law will be when the matter is decided by the Maryland Court of Appeals."

The Judge's "informed prediction" extended the coverage of the omnibus clause to the second permittee.

In the case at bar again we are presented with facts "tantalizingly similar" to *Ohio Casualty;* however, when and if the occasion arises for this Court to fulfill the "informed prediction" prophesied by Judge Winter, we feel that it must be on a more clear-cut set of facts than those encountered in the instant case, which is distinguishable from *Ohio Casualty.*

In the case at bar, assuming Mrs. Fuller to be a "named insured," Quade was the first permittee and under the decisions of many jurisdictions, see 7 *Appleman, supra,* coverage afforded by the omnibus clause would extend no further. Had Quade given permission to Heiston to operate the vehicle, he would have been a second permittee and the issue presented by *Ohio Casualty* would be before this Court. However, we are of the opinion that neither Quade, Mrs. Fuller nor anyone else gave Heiston permission to use the car, and his presence behind the steering wheel was gained by deception.

According to Heiston's admission, in response to his request to Quade that he be allowed to use the car, Quade told him that he would have to call up Mrs. Fuller and ask her permission and gave him the telephone number where she could be reached. In the deposition given by Heiston, under oath, on September 1, 1965, he stated, "I called her [Mrs. Fuller] up and asked her if I could take my girl friend—my wife—out on a date, could I borrow the car for a few hours. * * *. She said yes."

At the hearing on the request for a declaratory judgment, Heiston changed his testimony and stated that he tried to reach Mrs. Fuller on the phone but the line was busy and Quade said that he would get in touch with her and that he assumed that Quade had done so because Quade came out of the house and gave him the keys.

The deposition of Heiston was not introduced in evidence but was used on cross-examination to impeach his direct testimony. The judge in the court below, having the opportunity to hear and observe the witness, obviously concluded that Heiston's testimony at the trial was unworthy of belief. Quade did not

appear at the hearing and Mrs. Fuller testified that she did not receive any calls from either Heiston or Quade.

Under these circumstances we do not think that the lower court erred in finding that Heiston's use was nonpermissive. Rule 886 a.

We are aware that with Heiston operating the Fuller vehicle with Quade, the permittee, present in the back seat, that in keeping with the holding of this Court in *Casualty Co. v. Mitnick,* 180 Md. 604, 26 A. 2d 393 (1942), that Heiston's operation of the vehicle might be deemed Quade's use of the vehicle, as Chief Judge Bond in *Casualty Co. v. Mitnick, supra,* said at p. 607:

> "using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another."

However, in the instant case Heiston's girl friend was present in the front seat—he was on a date with her—and, although Quade was present, the benefit of the use of the car inured to Heiston. As Heiston stated in his deposition:

Q. If you had permission to use the car did he [Quade] have to be with you?

A. No, sir.

This also reveals that Heiston's deception was of such quality as to vitiate any validity that normally might have been accorded the proposition that the use was that of the first permittee at the time of the accident.

Zurich also contended that Monarch waived its right to rely on the defense of nonpermissive use because in the letter which Monarch's attorney wrote to Heiston, under date of January 18, 1965, denying him coverage, it gave as the reason Heiston's non-cooperation.

It should be borne in mind, however, that when Zurich filed its suit against Monarch requesting a declaratory judgment, Monarch, in its plea to the declaration, raised the defense of nonpermissive use as well as that of non-cooperation.

We do not think that the cases relied upon by Zurich to sustain its contention of waiver and estoppel are apposite to the

case at bar. *Foard v. Snider,* 205 Md. 435, 109 A. 2d 101 (1954) dealt with the question of the waiver of an option to purchase land and chattels by the optioner's continuing to negotiate with the optionee after the expiration date of the option. *McElroy v. John Hancock Life Ins. Co.,* 88 Md. 137, 41 A. 112 (1898) involved a situation where an insurer was held to have waived the failure of the beneficiary to submit proof of death within 90 days after the insurer had written once for further information and had held the proof received for four months before denying liability. *Fidelity & Casualty Co. v. Riley,* 168 Md. 430, 178 A. 250 (1935), involved the failure of the insured to give notice of injury within the required time, and this Court held that such a defense is not available to the insurer after it had denied that the policy was in force on the day of the accident.

We do not think that the facts of this case present a situation where an election had to be made of one, of two or more defenses, to the exclusion of others; nor do we feel that Zurich's position was in any way prejudiced by Monarch's actions. The first notification that Monarch received concerning possible involvement was a letter from Zurich, dated December 9, 1964. On January 18, 1965, Monarch wrote Heiston denying coverage because of his non-cooperation. Perhaps, if Heiston had made himself more accessible, Monarch, at an earlier date, would have been aware of the availability of the defense of nonpermissive use. In any event, as we have previously stated, we do not think Monarch's actions spell out either a waiver of the defense of nonpermissive use or grounds estopping Monarch from relying on it.

*Judgment affirmed, with costs.*