COHEN, Administrator of the Estate of Josephus Brown *v.* AMERICAN HOME ASSURANCE COMPANY, ET AL.

\* \* \* \*

AMERICAN HOME ASSURANCE COMPANY *v.* BROWN

[No. 46, September Term, 1969.]

*Decided November 3, 1969.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*William A. Franch,* with whom were *Wray & Serio* on the brief, for appellant and cross-appellee.

*William E. Brannan, Assistant Attorney General,* with

whom was *Francis B. Burch, Attorney General,* on the brief, for appellee Unsatisfied Claim and Judgment Fund.

*Louis G. Close, Jr.,* with whom were *Due, Whiteford, Taylor & Preston* on the brief, for appellee and cross-appellant.

SMITH, J., delivered the opinion of the Court.

This is a declaratory judgment action brought to determine to what extent, if at all, coverage existed on a policy of insurance issued by appellee and cross-appellant, American Home Assurance Company (American Home).

Cross-appellee, Frances Louise Brown, on December 9, 1965, owned a 1958 Chevrolet sedan. On that day it was involved in an accident while operated by her son, Josephus. He was killed subsequent to that accident. The administrator of his estate is an appellant.

On September 22, 1965, Mrs. Brown says she applied to Basin and Basin Insurance Agency, Inc., for an automobile liability policy, the office of this firm being located on Ritchie Highway across the road from the Department of Motor Vehicles in Glen Burnie. There was filed in evidence an application made to Basin and Basin purportedly signed by "Francis Brown" dated September 22, 1965. At the top of the application it is indicated that the name of the insured is "Francis Louise Brown". The driver information shown is listed with reference to "Frances", a "female" born on the date of birth of Mrs. Brown and holding a Maryland motor vehicle operator's license with number identical to Mrs. Brown's. The application was for a 1958 Chevrolet four door sedan. Policy # "3104629" appears at the top of the application. Also in evidence is what purports to be policy #3104629 in the name of Francis Louise Brown covering what is described in one place as a 1958 Chevrolet with serial number corresponding to that of Mrs. Brown's car, while

in another place the indication is that the policy coverage is on a 1961 Chevrolet with an entirely different serial number.

The insurance application, in response to a requirement to list all drivers, listed only Mrs. Brown. She denied authorizing anyone to sign her name, denied ever having signed her name "Francis Brown" and introduced a number of documents with her first name spelled "Frances". Her testimony indicated no knowledge as to the circumstances under which the signature "Francis Brown" was affixed. Also filed in evidence were various invoices from Basin and Basin directed to Frances Brown or Frances L. Brown. The first of these specified its application to 1958 Chevrolet four door sedan with serial number corresponding to that owned by Mrs. Brown.

Josephus Brown resided with his wife in a trailer near his mother and father. He was not a member of the same household as his mother. Mrs. Brown's husband had a back injury about two years prior to the time when insurance was obtained, being bedridden at times. Mrs. Brown said she needed the automobile for transportation to and from work. She testified that when she applied for the insurance it was her intention that she be the sole driver of the car.

On December 9, 1965, Mrs. Brown drove Josephus and his wife to her place of employment in Odenton. She stated that at that time she believed her son's motor vehicle operator's license which had been previously suspended had been reinstated. Her son had led her to believe this because he had been driving a truck for a company that was building a motel near Laurel. On December 9 he was unemployed.

Mrs. Brown said that on the day in question her son, Josephus, had a series of conversations with her in which he asked for the keys for her car. He wanted, so it is said, to travel to the Sierra Bar for the purpose of making transportation arrangements with regard to contemplated employment. She ultimately delivered the keys to

Josephus with the understanding that a friend, Scott, was to drive the car. She testified on direct examination, "I made it definitely clear to [Josephus] that he was not to drive that car * * *." A similar statement was made on cross-examination. Unfortunately, Josephus did not heed the admonition of his parent and was driving the car at the time of the accident. Scott was not then around. There is no evidence relative to the nature of the "actual use" at the time of the accident, as to the location of the accident nor of the point of beginning and point of destination of the trip in progress when the accident occurred.

Suit was brought in the Circuit Court for Anne Arundel County against Frances L. Brown and the estate of Josephus Brown as a result of the accident.

American Home declined to defend either Mrs. Brown or the administrator of her son's estate. This suit for declaratory judgment was then brought. Judge Childs in the Circuit Court for Anne Arundel County held American Home bound to defend Mrs. Brown, but not responsible for the defense of the suit against the estate of Josephus Brown, thus producing the appeal and cross appeal here presented. We shall affirm the decision of Judge Childs.

Questions presented to us are (1) was a policy of insurance issued to Frances Brown?; (2) was there material misrepresentation to American Home by Frances Brown?; (3) did the insuring agreements contained in the American Home policy extend coverage to both defendants in the damage suit?; (4) are counsel fees and expenses to be allowed to the counsel of record for Frances Brown and the estate of Josephus Brown in the damage suit?; and, (5) is the attorney of record for the plaintiff in the declaratory judgment proceeding entitled to be reimbursed for attorney's fees and disbursements for the prosecution of the declaratory judgment action? Further facts will be developed as the questions are discussed.

## I and II

Apparently American Home concedes, as indeed it must, that the misspelling of "Fran*ces*" as "Franc*is*" would not in itself be grounds for contending that a policy of insurance was not issued to Frances Brown. See *Erie Insurance v. Lane*, 246 Md. 55, 227 A. 2d 231 (1967). American Home here contends that the policy was not validly issued because Mrs. Brown did not sign the application and it claims that there was misrepresentation because in her application she said the car would be used only by her. The trial judge in his opinion said:

> "American Home in its answers to interrogatories admitted that Basin and Basin was its agent in procuring the policy in question, but contended that the policy was void *ab initio* because it further argued that the application contained a material misrepresentation in that it includes the statement that the use of the car would be one hundred percent that of Frances Brown. American offers no authority for this legal proposition, therefore the court must assume it could find none. The argument would seem somewhat specious on its face for if it were the intent of the parties that the car would be *operated* entirely by Mrs. Brown, there would be no reason to include provision III under Insurance Agreements wherein the company agreed that the word 'insured' includes — the spouse, if a resident of the same household, and any person while using the automobile with permission of either spouse. Moreover, there is a recognized difference between the term 'use' and the term 'operate.' *Melvin v. American Auto Insurance Co.*, 232 Md. 476.

> "There is no merit to the contention that American was not liable because Mrs. Brown did not actually sign the application. She went to American's agent, made a deposit, answered

all questions asked of her, honestly it appears, and undoubtedly would have signed the application had she been requested to do so. If anyone were misled by this procedure, the moving party was American's own agent. It cannot at this point blame Mrs. Brown for an irregularity in its own procedure."

American Home cites no authority for its position relative to signing. The general rule relative to necessity and sufficiency of signing of an application is set forth in 43 Am.Jur.2d, *Insurance*, § 209 (1969), where it is said:

"Generally if a signed application is a condition precedent to inception of the risk and the applicant is charged with knowledge of that requirement, failure to sign the application precludes the making of a binding contract because of the lack of a meeting of the minds. But if the contract does not require a signed application, acceptance of an unsigned application and delivery of the policy complete the contract and bind both the insured and the insurer.

"It is not always essential that a proposed insured personally sign the application in order to create a binding insurance contract. In several cases where the application was signed by another for the insured with the knowledge of the insurer's agent, the policies issued have been sustained, notwithstanding provisions of the contract requiring that the application be signed by the insured personally. Such is the rule where the application has been signed by a third person at the direction of the insured or by his authority and he has ratified the act. The insurer cannot avoid the obligation of the policy on the ground that the application was not signed by the insured, where the insurer's

agent signed it for the insured as authorized by him, or where the insurer's agent assured the plaintiff beneficiary that signature of the application by the insured would not be necessary. Indeed, an insurer is liable on a policy issued on an application signed only by its agents in their own names, notwithstanding false representations in the application, where the insured is not responsible for such misrepresentations. Similarly, if an insurance agent fills out and signs an application without the authority or knowledge of the applicant, the insurer is liable on the policy, notwithstanding provisions therein avoiding the policy for any misrepresentations."

In *New York Life Insurance Co. v. Rogers,* 156 Md. 88, 143 A. 651 (1928), the question presented was whether delivery of a policy by an agent of an insurer to the beneficiary, who paid the premium, was rendered ineffective by the fact that an endorsement on the policy, stating truthfully that the insured had no other application for life insurance then pending, was not signed by him personally, but by the beneficiary at the agent's suggestion. The Court said:

"Although the amendment of the application was prepared with a view to its being signed by the insured, its practical purpose was accomplished by the verification suggested and obtained by the agent to whom the policy was entrusted for delivery. The certification was by a premium paying party who had knowledge of the fact of which the defendant wished to be assured. No question has been raised as to the accuracy of the statement thus certified. The agent apparently believed, and the evidence admits of the inference, that the plaintiff had the requisite authority to certify in his brother's name to the statement contained in the amendment." *Id* at 91.

In this case the policy makes no reference to a signed application. It states that the company "[a]grees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations * * *". No reference is made in the declarations to the application or to any intention of American Home that it was necessary for the application to be signed by Mrs. Brown.

The burden is on the insurer to establish the insured's fraud or misrepresentation in an application for insurance. *Erie Insurance v. Lane, supra.* Ordinarily, whether a representation in an insurance application was true or false, or material to the risk, is for the jury to determine. *Monumental Ins. Co. v. Taylor,* 212 Md. 202, 129 A. 2d 103 (1957), and *Sun Ins. Office v. Mallick,* 160 Md. 71, 153 A. 35 (1931). The trial judge was the trier of facts. Under Maryland Rule 886 a his findings are not to be disturbed unless clearly erroneous. He determined that a policy of insurance was issued to Mrs. Brown and that there was no material misrepresentation to American Home by Mrs. Brown. There was evidence to support those findings.

### III

Insuring Agreement III (a) of the policy issued by American Home to Mrs. Brown reads as follows:

> "III. Definition of Insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured * * * and also includes any person while using the automobile * * * provided the actual use of the automobile is by the named insured or such spouse or with the permission of either . . . ."

Thus we are again brought face to face with the proper application of the omnibus clause and again find ourselves in agreement with the statement of Judge Hall in the dissenting opinion in *Matits v. Nationwide Mutual*

*Insurance Company,* 33 N. J. 488, 166 A. 2d 345 (1960), when he said:

> "The simple words, perhaps too simple, 'actual use * * * with the permission' of the policyholder or named assured, found in substantially similar form in practically all automobile liability policies issued in every jurisdiction save compulsory insurance states, have engendered probably as much reported litigation as any common contractual phrase. The absence of an express definition of the key words, either legislatively or within the instrument, coupled with the infinite variety of factual situations arising, has resulted in the widest conceivable range of judicial approach, reasoning and result." *Id.* at 498.

We quoted that language in *American Home Assurance Co. v. Erie Ins.,* 252 Md. 116, 248 A. 2d 887 (1969).

The Josephus Brown estate relies upon the case of *Casualty Company v. Mitnick,* 180 Md. 604, 26 A. 2d 393 (1942). In that case the omnibus clause covered "not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof * * * provided further that the actual use is with the permission of the named insured." The owner and "named insured" kept the car for the use of his granddaughter. The granddaughter regularly kept the key and did all the driving. On the occasion covered by the case she had permitted a friend to drive at the request of the friend who was in her company at the time of the accident. There was no evidence that the owner knew of the friend's driving the car or had consented to it. The only testimony on the point was that he had instructed his granddaughter to let nobody but herself drive it. Chief Judge Bond for the Court said:

> "This court is unable to agree with the contention that the granddaughter, Mrs. Phillips,

was not under this policy an insured for whose judgment debt the insurer would in any case be liable. It is argued that the words 'person using,' and 'use,' in the omnibus clause, refer to the actual driving of the car, not to taking the car out and controlling the trip while driven by another. But using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another. Mrs. Phillips was 'still the director of the enterprise, still the custodian of the instrumentality confided to [her] keeping, still the master of the ship.' " (citing authorities) *Id.* at 607.

In *Melvin v. American Auto Insurance Company,* 232 Md. 476, 194 A. 2d 269 (1963), the omnibus clause provided the persons insured were "the named insured and any resident of the same household" and provided coverage for "[a]ny other person * * * legally responsible for the use of * * * an automobile * * * not owned * * * by such person * * * provided the actual use thereof is by a person who is an insured * * * with respect to such automobile * * *." The son of the owner of the vehicle was a resident of the same household as the named insured. He had general permission to use the car. He went to a party and after leaving asked a friend to drive, the son remaining in the car. It was argued by American Automobile Insurance Company in that case that the "actual use" was by the friend, and not by the son, because the friend was actually operating the car at the time of the accident. In an opinion by Judge (later Chief Judge) Henderson this Court said:

"We see no reason to limit the meaning of the words 'actual use' to the operation of a vehicle, where the operator is the agent or servant of another and subject to his immediate and present direction and control. There appears to be no case that has construed the words

in the context of this policy, but there are cases in which the word 'use' has been so construed. In *Casualty Co. v. Mitnick,* 180 Md. 604, 607, Chief Judge Bond, for this Court, said that 'using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another.' (Citing authorities). The cases also indicate that 'actual use' means the particular use contemplated when permission is granted and relied on.

\* \* \*

"The appellee cites 7 Appleman, *Insurance Law and Practice,* sec. 4354 as stating: 'The term "actual use", as employed in the present policy, was drafted to confine the coverage to situations where the employment made of the vehicle at the time of the accident was within the scope of the permission granted.' We think it is clear, however, that the policy there referred to was one in which the coverage extended only to persons using the vehicle with the permission of the named insured. Thus, coverage depends in that situation upon the scope of the permission granted. In sec. 4361, Appleman states that '[t]he ordinary rule is usually stated to be that the bailee of an automobile, having possession with the permission of the named insured, cannot validly permit a third person to operate the vehicle so as to bring such third person within the policy protection'. We may note that there are many cases to the contrary. But in sec. 4360, the author states: 'The term "actual use" refers to the actual employment of the vehicle at the time of the accident, rather than to the identity of the operator at such time.' Thus, so far as the meaning of the words is concerned, the author would seem to agree that use and operation are not synonymous.

"In the instant case Barry was covered as a resident of his father's household, and did not need to rely upon the permission granted. The policy ·in the instant case is broader than any of the policies in the cases cited by Appleman and relied upon by the appellee. Here the test is use rather than permission." *Id.* at 478-80.

In *Zurich Company v. Monarch Company,* 247 Md. 3, 230 A. 2d 330 (1967), the omnibus clause covered "any other person using such automobile with the permission of the named insured, provided his actual operation * * * is within the scope of such permission, * * *." Quade secured permission from Mrs. Fuller, a "named insured" to use the automobile for his personal use. He was held not to be a member of the household within the meaning of the policy. Heiston wanted to use the car. Quade told him he would have to obtain the permission of Mrs. Fuller. Quade was led to believe that permission was given and delivered the keys to Heiston. Judge Finan for the Court there said:

"We are aware that with Heiston operating the Fuller vehicle with Quade, the permittee, present in the back seat, that in keeping with the holding of this Court in *Casualty Co. v. Mitnick,* 180 Md. 604, 26 A. 2d 393 (1942), that Heiston's operation of the vehicle might be deemed Quade's use of the vehicle, as Chief Judge Bond in *Casualty Co. v. Mitnick, supra,* said at p. 607:

'using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another.'

"However, in the instant case Heiston's girl friend was present in the front seat—he was on a date with her — and, although Quade was present, the benefit of the use of the car inured to Heiston. As Heiston stated in his deposition:

" 'Q. If you had permission to use the car did he [Quade] have to be with you?

" 'A. No, sir.'

"This also reveals that Heiston's deception was of such quality as to vitiate any validity that normally might have been accorded the proposition that the use was that of the first permittee at the time of the accident." *Id.* at 10.

In *American Home Assur. Co. v. Erie Ins., supra,* the omnibus clause covered "any other person *using* such automobile with the permission of the *named insured,* provided his actual operation * * * is within the scope of such permission * * *." (emphasis in policy) We there pointed out the three rules said to apply to omnibus clauses, namely (1) the strict or conversion rule, (2) the liberal rule, and (3) the moderate or "minor deviation" rule. Heiston in that case had been granted permission for a specific purpose with the admonition that he "come straight back". The errand for which permission was granted would have taken 30 to 45 minutes. The accident took place while Heiston was off on a mission of his own some two and half hours after he borrowed the car and while proceeding in an absolutely opposite direction from that for which permission was granted. We there determined that we did not have to decide whether we adhere to the strict or conversion rule or the moderate or "minor deviation" rule, that the "actual operation" was not "within the scope of * * * permission [granted]".

In *Mt. Beacon Insurance Company v. Williams,* 296 F. Supp. 1094 (D.Md. 1969) Chief Judge Thomsen said:

"This Court concludes that the Court of Appeals of Maryland would hold that the words in the policy should 'be given their customary, normal meaning,' see quotation from *American Home Assurance Co.,* supra, and would construe the term 'actual use' to mean 'the particular use contemplated when permission [was] granted.'

*Melvin,* supra, 232 Md. at 479, 194 A. 2d at 271." *Id.* at 1100.

Again, we do not consider ourselves obliged to determine whether we follow the strict or conversion rule or the moderate or "minor deviation" rule. We distinguish the facts here from *Casualty Company v. Mitnick, supra,* and also from *Melvin v. American Auto Insurance Company, supra.* We believe that in determining whether the use comes within the purview of the omnibus clause one must examine the total facts. In *Mitnick, supra,* there was a general grant of use of the automobile. It was kept for the complete use of the granddaughter. It is true that she violated the instructions given to her by her grandfather when he told her that no one else was to operate the car, but the car was generally available for her use and convenience and was being so used at the time of the accident.

In *Melvin, supra,* coverage was based on the fact that the car was really being used at the time by a member of the household who, therefore, was a named insured, a member of the household who for his own convenience at the moment while using the car requested someone else to operate. Accordingly, the Court was not obliged there to determine whether it accepted the comment in 7 Appleman, *Insurance Law and Practice,* § 4354 which states:

> "The term 'actual use', as employed in the present policy, was drafted to confine the coverage to situations where the employment made of the vehicle at the time of the accident was within the scope of the permission granted."

Judge Henderson there pointed out, however, that in a situation such as this where it was permission that was involved, "coverage depends in that situation upon the scope of the permission granted."

There is no evidence in this case as to the particular mission upon which Josephus Brown was engaged at the

time of the accident. Scott was not operating the vehicle, and there is no evidence before us to indicate he was even in it. Accordingly, the case comes close to *Zurich Company v. Monarch, supra,* in that it might well be said that the keys were obtained by deception.

When one considers the total circumstances here involved, the inevitable conclusion is that the use here made by Josephus Brown was not within the scope of the permission granted and was not the particular use contemplated when the permission was granted.

## IV

It was agreed between the parties that $405.00 were reasonable counsel fees for the defense of Mrs. Brown and that expenses of $3.90 incurred were reasonable. The trial judge said:

> "Its refusal to defend Mrs. Brown was unjustified and the court will therefore award her the stipulated amount of $405.00 as reasonable counsel fees and expenses of $3.90."

American Home says in its brief that although it agrees that attorney's fees ought to be allowed to counsel for defending persons where it is subsequently determined that those persons were covered by a contract of liability insurance, "* * * it is perfectly clear that the only real defense in the damage action was on behalf of Calvin E. Cohen, Administrator of the Estate of Josephus Brown, Deceased. From the evidence in this declaratory judgment proceeding it is clear that there was no agency between Frances and Josephus and that a Motion for Summary Judgment would remove her from the proceedings. For this reason, the Appellee does not feel that the total sum of the agreed fees was properly charged to it under the circumstances."

In *Riggs Nat'l Bank v. Welsh,* 254 Md. 207, 254 A. 2d 172 and 255 A. 2d 289 (1969), we quoted the comment of Judge Marbury for this Court in *State Roads Comm.*

*v. Sharper,* 231 Md. 411, 190 A. 2d 647 (1963), wherein it is said:

> "Maryland Rule 828 b 1 specifies that the printed extract *shall* contain such parts of the record reasonably necessary for the determination of questions presented on appeal. It is noted that this section is a mandatory requirement." (emphasis in original) *Id.* at 413.

The record extract contains the following comment on the part of counsel for the estate of Josephus Brown and Mrs. Brown:

> "Now, we have come, Your Honor, to an agreement as to the figure on the counsel fees. If the Court should rule in our favor, we have agreed that in defense of the damage suit, counsel fees in the amount of $405.00 should be awarded, plus disbursements of $3.90, coming to a total of $408.90."

No issue was taken with this statement by counsel for American Home nor does the printed extract contain anything indicating an apportionment between Mrs. Brown's case and the case of her son. It was American Home that made the election some two and a half months after the accident to attempt to avoid any defense of Mrs. Brown, its assured, by advising her that it regarded the policy issued to her "as null and void from inception because of a material misrepresentation in the signed application which was made a part of the above mentioned policy and which served as an inducement to [the] company to issue said policy." On the record here presented we have no basis for concluding that the trial judge was in error when he determined the counsel fees awarded to be proper fees for the defense of Mrs. Brown alone.

## V

American Home, having sought unsuccessfully to

avoid its defense of its assured, Mrs. Brown, objects to the action of the trial judge when he said:

> "There remains the question of attorneys' fees and costs in bringing the declaratory decree action. The court is in sympathy with the argument that the purpose of buying insurance would largely be defeated if the insurance company were to refuse to honor its commitment until forced to do so through suit. This is especially so when the grounds of denying liability are as tenuous as those advanced in the case of [Frances] Louise Brown. On the other hand, the grounds for denying coverage to the estate are substantial and the law is largely as yet unsettled. See *Zurich v. Monarch, supra; Ohio Casualty v. Pennsylvania National*, 238 F. S. 706; 4 A.L.R. 3rd 10. This being the case, the court will allow two-thirds of the amount stipulated as being a reasonable counsel fee, since the court feels that even without the problem of Josephus' situation the major portion of the work would have been involved. Accordingly, it will award $676.67 as attorneys' fees and $21.38 as expenses."

It calls to our attention the holding of this Court in *Erie Insurance v. Lane, supra,* where Judge Marbury for the Court said:

> "The trial judge in his declaratory judgment included a provision for the payment to appellee's counsel of an attorney's fee of $250. The appropriateness of this action is not contested on this appeal. However, appellee in her brief, in the event the judgment is affirmed, asks us to provide for an additional fee to her counsel for defending this appeal. In Maryland, except in special circumstances, not here present, the practice has been to require successful parties

to pay their own counsel fee. 25 C.J.S., *Damages*, Section 50 a. Cf. *Freedman v. Seidler*, 233 Md. 39, 194 A. 2d 778; *Harry's Tavern, Inc. v. Pitarra*, 224 Md. 56, 166 A. 2d 908." *Id.* at 64-65.

It further calls our attention to *Freedman v. Seidler*, 233 Md. 39, 194 A. 2d 778 (1963), where Judge Horney for the Court said:

> "Nor should the lower court have allowed counsel fees as a part of the damages. The general rule is that costs and expenses other than the usual and ordinary court costs are not recoverable in an action for damages, and, in the absence of special circumstances or statutory requirement, counsel fees are not a proper element of damages in an action for breach of contract." *Id.* at 47.

That case involved an equity action for injunctive relief and a money judgment for damages allegedly sustained as result of the breach by one tenant of the restrictive covenant in the lease between himself and the landlords prohibiting competition with another tenant of the same landlords. The Court recognized that there were cases in which there might be attorney's fees allowed because immediately after the above quotation the opinion went on to say:

> "The record in this case does not disclose such special circumstances as are required to justify the allowance of a fee for legal services, and, in this respect the present case is clearly distinguishable from *McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 73 Atl. 731 (1909). There the fee allowed was for legal services in a separate litigation against another party which the wrongful act of the defendant had required. Here, the fee allowed was for legal services rendered in this litigation. The fact

that the landlords impleaded the offending tenant did not require the injured tenant to join him as a third party defendant. Nor did the impleading or joinder of the offending tenant as a third party create such special circumstances as would justify the award of counsel fees." *Id.* at 47-48.

American Home also cites *Harry's Tavern, Inc. v. Pitarra*, 224 Md. 56, 166 A. 2d 908 (1961). That case involved a controversy over the sale of a tavern business. Judge (later Chief Judge) Henderson there said for the Court:

"On the second point, it is the general rule that costs and expense of litigation, other than the usual and ordinary court costs, are not recoverable in an action for damages. 1 Sedgwick, *Damages* §§ 229, 232 (9th ed.). The general rule was recognized in *McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 160, but it was there held that the expense of an attorney's fee was recoverable where the wrongful act of the defendant forced the plaintiff to engage in litigation with others. The exception has been recognized in other cases. See Note, 45 A.L.R. 2d 1183, and McCormick, *Damages,* § 68. But in the absence of special circumstances, attorney's fees are not a proper element of damages in a suit for breach of contract. See *id.* § 61; *Blum v. William Goldman Theatres*, 164 F. 2d 192, 198 (3d Cir.), and 48 Col. L. Rev. 640; Comments, 34 Tul. L. Rev. 146. We find no such special circumstances in the instant case." *Id.* at 63.

We find persuasive the comment made in 7A Appleman, *Insurance Law and Practice* (1962), § 4691 where, after pointing to certain decisions holding that where an insurer failed to defend until after an adverse decision

in a declaratory judgment action instituted by it, the insurer was not liable to pay the attorney's fees and expenses incurred by the insured in the declaratory judgment act "in the absence of fraud, bad faith, or stubborn litigiousness on the part of the insurer" and the author went on to comment:

> "But, despite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above."

There is a decided split of authority on the subject. The "contra" view is well expressed in the recent declaratory judgment case of *Gerhardt v. Continental Ins. Cos.*, 48 N. J. 291, 225 A. 2d 328 (1966), where it is said:

> "The remaining question is whether she is entitled to recovery for the counsel fees and costs incurred by her not only in the workmen's compensation proceeding but also in her legal action in the courts. Since the insurer defaulted on its obligation to defend the insured in the workmen's compensation proceeding, it must

bear, as a traditional element of damage, the expense including the reasonable counsel fee incurred by the insured in defending there in its stead. (citing authorities). We do not understand the insurer to dispute this, although it does contend that no fee for legal services may be allowed or included in the taxed costs in the action instituted and prosecuted by the insured in the Law Division and in our appellate courts. This contention is clearly sound under R.R. 4:55-7 and the judicial precedents. See Verhagen v. Platt, 1 N. J. 85, 91, 61 A. 2d 892, 4 A.L.R.2d 1309 (1948); Textileather Corp. v. American Mutual Liability Insurance Company, 110 N.J.L. 483, 485-488, 166 A. 214 (E. & A. 1933).

"The insured suggests that she might be brought within the fund in court doctrine under R.R. 4:55-7 but there is nothing to support this. Cf. Grober v. Kahn, 47 N. J. 135, 219 A. 2d 601 (1966). She also suggests that inherent equitable powers might be invoked and she points to widespread out-of-state practices for the allowance of counsel fees against insurance companies which have improperly refused to make payment thereby compelling their insureds to incur the burdensome expenses of instituting law suits. See 6 Appleman, Insurance Law and Practice §§ 4031-39 (1942). Those practices generally rest on statutory provisions which have no counterpart in New Jersey. When our court rules were originally adopted they embraced the view that sound judicial administration will best be advanced by having each litigant bear his own counsel fee except in those few situations specially designated in R.R. 4:55-7. See Janovsky v. American Motorists Ins. Co., 11 N. J. 1, 7, 93 A. 2d 1 (1952). There have been calls for restudy of

the counsel fee rules (Bergen Builders, Inc. v. Horizon Developers, Inc., 44 N. J. 435, 439, 210 A. 2d 65 (1965) ; 89 N.J.L.J. 308 (1966)) and the subject was dealt with fully at the June 1966 Judicial Conference. No modifying action has thus far been taken and in the absence thereof the pre-existing rules are to be deemed controlling." *Id.* at 300-01.

Decisions in some states on the subject have rested upon statutory provisions as, for instance, see *Phoenix Indemnity Co. v. Anderson's Groves, Inc.* (originating from Florida), 176 F. 2d 246 (5th Cir. 1949) ; *Connecticut Fire Insurance Company v. Reliance Insurance Company of Madison, Wisconsin,* 208 F. Supp. 20 (D.Kan. 1962) ; *Runyan v. Continental Casualty Company,* 233 F. Supp. 214 (D.Ore. 1964) ; *Curran v. Security Insurance Company,* 195 F. Supp. 562 (W.D.Ark. 1961), appeal dismissed, 296 F. 2d 733 (8th Cir. 1961) ; *Farmers Casualty Company (Mutual) v. Green* (a Kansas case) 390 F. 2d 188, (10th Cir. 1968). See also annotation in 8 L.Ed.2d 921 indicating that states with such statutes include Arkansas, Florida, Illinois, Kansas, Louisiana, Missouri, Nebraska, Oregon, South Dakota and Texas.

In this case, there was a policy provision by which the company obligated itself to "reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request." Some courts have held such provision to be a basis for requiring the company to pay attorney's fees. For instance, in *Standard Accident Ins. Co. of Detroit v. Hull,* 91 F. Supp. 65 (S.D.Cal. 1950), the court said:

> "*Query 2:* Do the fees of attorneys for Hull and Berry constitute reasonable expenses, 'incurred at the Company's request' by the insured, in view of (1) The act of the Company in filing action for declaratory relief, naming Hull and Berry as defendants, and causing them to be served with process; (2) The prayer of

plaintiff's complaint, not merely *requesting* but *requiring* defendants to appear and set up their claim.

"Our answer is yes. The language of the plaintiff's agreement is clear and the record shows Hull and Berry employed attorneys and incurred obligations for attorney's fees herein." *Id.* at 68. (emphasis in original)

In *Occidental Fire and Casualty Company v. Cook*, 92 Idaho 7, 435 P. 2d 364 (1967), where the company had instituted the declaratory judgment action, Justice Smith said for the Court:

"Appellant contends that the trial court erred in awarding attorneys' fees to Lloyd Cook under the terms of the insuring agreement. Section II (e) of the 'Insuring Agreements' contained in the insurance contract, reads:

'The company shall — reimburse the insured for all reasonable expenses, other than loss of earnings incurred at the company's request.'

The fact that this is a declaratory judgment action should have no effect on the award of 'reasonable expenses' to the insured. Lloyd's rights are being determined in this cause and he is required to defend. Appellant Company cannot avoid its responsibility under Section II (e) of the insuring agreements, on the ground that the action is for declaratory judgment relief, when the effect upon the insured is as burdensome in its consequences as any other type of legal action. Standard Accident Ins. Co. of Detroit v. Hull, 91 F. Supp. 65, 68 (S.D. Cal.1950), a declaratory judgment action; see also Coast Lumber Co. v. Aetna Life Ins. Co., 22 Idaho 264, 125 P. 185 (1912)." *Id.* at 11.

On the other hand, in *Milwaukee Mechanics Ins. Co.*

*v. Davis,* 198 F. 2d 441, 445 (5th Cir. 1952), in similar circumstances the court said:

> "To say that a plaintiff in a declaratory judgment action, or for that matter in any law suit, 'requests' the defendant to employ attorneys to contest the action, is a mere play upon words and is contrary to the real substance of the transaction." *Id.* at 445.

In Vermont, a state without statutory authority for allowing attorney's fees in a declaratory judgment action, the court in *Utilities Construction Corp. v. Peerless Ins. Co.,* 233 F. Supp. 64 (D.Vt. 1964), without citing authority, said:

> "* * * Phoenix shall reimburse Utilities and Central Vermont for all expenses which Utilities and Central Vermont have incurred in the prosecution of this action for declaratory judgment." *Id.* at 71.

Some courts have proceeded upon the theory that attorney's fees in the declaratory judgment action flow from breach of the contract. For instance, in *Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (1966), the court said:

> "The only other question remaining is whether it was proper for the court to permit plaintiff to recover his legal fees incurred in the declaratory judgment action, although the general rule is that legal fees are ordinarily not recoverable unless there is statutory authority for it. Dworsky v. Vermes Credit Jewelry, Inc., 244 Minn. 62, 69 N.W.2d 118; Smith v. Chaffee, 181 Minn. 322, 232 N.W. 515; Stickney v. Goward, 161 Minn. 457, 201 N.W. 630, 39 A.L.R. 1216.
>
> "However, this action is in the nature of an action to recover damages for breach of contract. Legal fees incurred in the declaratory

judgment action were damages arising directly as the result of the breach. We think that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract. See, 7A Appleman, Insurance Law and Practice, § 4691." *Id.* at 137-8.

As previously indicated, Missouri is one of the states with a statute authorizing the award of counsel fees in certain cases. In *Southwestern Bell Tel. Co. v. Western Casualty & Sur. Co.*, 269 F. Supp. 315 (E.D.Mo. 1967), in a declaratory judgment action the court determined there was coverage under the insurance policy. After determining the statute to be penal in nature and that the insurer's failure to defend in that instance was sufficiently vexatious to come within the statute, the court said:

"This position is buttressed by the numerous statements to the effect that damages for breach of contract must place the plaintiff in a position as good as if the contract had been fully and properly performed from the beginning (see *Landie* [*v. Century Indemnity Co.*, Mo. App., 390 S.W.2d 558 (1965)]) and the statement in Willis v. American National Life Ins. Co., Mo. App., 287 S.W.2d 98 (1956), that the provision allowing plaintiff attorney's fees in an action to recover loss which the insurer vexatiously refused to pay is 'a matter of right connected with the performance of the contract, and not entirely of remedy, and such attorney's fees are a part of the insured's "recovery" '. (Citations omitted.)

"It appears that damages which seek only to restore plaintiff to the position in which he would have been had defendant performed the contract as it provided are not penal, but a mat-

ter of right under the circumstances of this case, and we, therefore, hold that in addition to the right to reimbursement for sums expended in the processing and/or settlement of the suits by Belt, Mosley and Washington, and for any amounts for which Bell became obligated as a result of such suits or settlements up to the maximum permitted by the insurance policy, Bell is also entitled to the expenses, costs and attorney's fees incurred in the instant suit." *Id.* at 319.

The matter of authorization of expenses was considered by this Court in *Anderson v. Md. Casualty Co.*, 123 Md. 67, 90 A. 780 (1914). There the insured was sued on a claim covered by the policy. The policy provided that at its "cost" the company would investigate all accidents and defend all suits against the insured, of which notice should be given as stipulated, with an agreement that the company would not be responsible for any expenses incurred by the insured unless first specifically authorized by the insurer in writing. Shortly before the case came to trial the attorney for the insurance company complained in writing to the insured that it seemed to be in sympathy with the plaintiff in the case, stated that matters might be developed in the course of the trial which might compel him to withdraw in order to protect the interests of the insurance company, and requested the name of counsel for the insured in order that he might be given the facts in possession of the insurance company's attorney, thereby enabling the insured's attorney to get ready for trial in the shortest possible space of time. Judgment was entered against the insured which the insurance company paid, but it declined to pay the fees of the attorney for the insured who had participated in the trial after the insurer wrote to the insured. The Court there said:

"In our opinion the appellant's right to recover in this case does not depend upon its abil-

ity to show that its expenditure for counsel fees was specifically authorized in writing by the insurer. The provision that the Casualty Company would not be responsible for expense incurred by the insured in the absence of such authorization could only apply where both parties were proceeding in accordance with the terms of the agreement. The notice in pursuance of which the appellant employed counsel was not consistent with the policy, but in direct opposition to its provision that the insurer should defend the action. It was given in reference to the contingency of the withdrawal of the Casualty Company from the case and its refusal to further perform its contractual duty to defend. It contemplated a possible recission and not a certain performance of the agreement. The letter from the general attorney to the appellant could not, therefore, be held to constitute an authorization of expenditures within the meaning of the clause in the policy dealing specifically with that subject. But in our view of the case there can be no doubt as to the liability of the appellee to make the reimbursement here claimed, under its express agreement to defend the accident suit at its own cost, unless it can show the existence of conditions sufficient in law to relieve it of that obligation. Our conclusion is that the prayer directing a verdict for the defendant should have been refused." *Id.* at 71-72.

In *Casualty Ins. Co. v. Messenger*, 181 Md. 295, 29 A. 2d 653 (1943), a liability insurance policy was issued covering operations of a tractor and trailer within a radius of 500 miles of Salisbury. An accident occurred at Yamassee, South Carolina, which the company held to not be within a radius of 500 miles of Salisbury. Judgment was obtained against the insured and his tractor

and trailer were sold by the sheriff at auction in South Carolina. The insured brought suit in Maryland for the loss of his tractor and trailer. He established the point of accident to have been within a radius of 500 miles of Salisbury. In sustaining the action of the trial court and jury in awarding the verdict to the insured for the loss of his vehicles, Judge Delaplaine said for the Court:

"The final controversy concerns the amount of damages allowable to the insured. This policy does not insure against damage to the insured's vehicles; but the refusal of the insurance company to defend the attachment suit and to pay the damages resulting from the accident in South Carolina caused the insured to lose his truck and trailer. Unquestionably the company's failure to perform these obligations constituted a breach of contract. The rule for the measure of damages for breach of contract, as laid down in England by Baron Alderson in the leading case of *Hadley v. Baxendale,* 9 Exch, 341, 5 Eng. Rul. Cas. 502, 504, has been adopted in the State of Maryland as well as generally by the [courts] of the United States. The rule is that the amount of damages recoverable for breach of contract is such as may reasonably be considered as arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the [probable] result of the breach of it. *Winslow Elevator & Machine Co. v. Hoffman,* 107 Md. 621, 635, 69 A. 394, 396, 17 L.R.A., N.S., 1130; *Primrose v. Western Union Telegraph Co.,* 154 U. S. 1, 14 S. Ct. 1098, 1106, 38 L. Ed. 883, 894, 15 *Am. Jur., Damages,* Sec. 52. Ordinarily a plaintiff in an action on an insurance policy cannot recover special damages for the detention of money due

to him under the policy beyond what the law allows as interest. *New Orleans Insurance Co. v. Piaggio,* 16 Wall. 378, 21 L. Ed. 358, 360. But when an insurer wilfully refuses to perform the obligations required by a liability insurance policy, such as to defend a suit in behalf of the insured or to pay a judgment against him, in consequence of which the insured suffers loss, the court can compel the insurer to respond in damages for such loss. *Miholevich v. Mid-West Mutual Auto Insurance Co.,* 261 Mich. 495, 264 N. W. 202, 86 A.L.R. 633; *Noshey v. American Automobile Insurance Co.,* 68 F. 2d 808; 29 *Am. Jur., Insurance,* Sec. 1269." *Id.* at 300-301.

American Home produced the current situation when it refused to defend its assured. Accordingly, whether one speaks in terms of its having authorized the expenditure by its failure to defend or whether one speaks in terms of the attorney's fees for the declaratory judgment action being a part of the damages sustained by the insured by American Home's wrongful breach of the contract, we hold American Home bound to pay the fees incurred by Mrs. Brown in bringing the declaratory judgment action to establish that American Home had not done that which it had agreed with her to do. Thus, we find no error in the rulings of the trial judge. Any holding in *Erie Insurance v. Lane, supra,* subject to a contrary interpretation is hereby expressly overruled.

*Decree affirmed; American Home Assurance Company to pay the costs.*