## ERIE INSURANCE EXCHANGE *v.* LANE, ETC.

[No. 177, September Term, 1966.]

*Decided March 13, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*Robert J. Thieblot* and *T. Benjamin Weston,* with whom were *Rollins, Smalkin, Weston & Andrew* and *Allen, Thieblot & Hughes* on the brief, for appellant.

*Norman N. Yankellow* for appellee.

MARBURY, J., delivered the opinion of the Court.

A petition for declaratory judgment brought by Lola B. Lane, an alleged insured motorist, prayed for a judgment de-

claring that a specified policy of automobile liability insurance issued by the appellant, Erie Insurance Exchange (Erie), was valid and in effect on April 10, 1961, and that Erie was obligated to defend against certain claims arising out of an automobile accident. From a judgment in favor of the petitioner-appellee entered in the Superior Court of Baltimore City, Judge Cullen presiding without a jury, Erie has appealed.

On March 27, 1961, appellee made application in the name of Lola B. Lane for a policy of automobile liability insurance with Erie. A policy was issued to appellee covering a certain automobile registered in the name of "Lola B. Lane." Shortly thereafter, on April 10, 1961, while being driven by appellee, the vehicle described in the policy skidded and collided with an abutment of a bridge over Weems Creek in Anne Arundel County, Maryland. Two passengers in the car, Eugene M. Lane and Lawrence W. Gilbert, and the appellee-driver allegedly sustained injuries. The two passengers made claims against appellee.

After the accident, an investigation was made by Erie and a statement was taken from appellee in which she stated that she was not in fact married to Eugene M. Lane. In her statement she revealed that she was married to Clifton Hall from whom she had been separated since 1952, but was not divorced. At the present she was living with Eugene M. Lane, one of the injured passengers. By letters dated June 5, 1961, and June 27, 1961, Erie notified appellee that it was treating the policy of insurance which it had issued to her as void from its inception by reason of her misrepresentation of her name and marital status in the application for the policy. Erie also tendered her the premium paid therefor. Following this disclaimer, appellee filed suit against Erie for a declaration that the policy was in full force and effect on the date of the accident and that Erie be required to defend the claims against her and pay any judgments that might be obtained thereon.

At the trial, appellee testified that she had signed the name Lola Lane to the application for the policy. Erie had been recommended to her by her daughter, who worked as a secretary for an agent of Erie. At the time the application was made out, appellee had not seen Clifton Hall since 1953. She did not know

if she was still married to him since she had never received any divorce papers. She assumed the surname Lane in 1953 because she liked it, and she has been using it ever since. She maintained the same social security number, but had the surname on her card changed to Lane. She testified that when she took employment she used the name of Lola B. Lane and received statements in that name, but she never indicated to her employers whether she was married or single. She has lived with Eugene M. Lane since 1953; however, she testified that she had never held herself out as his wife.

A witness for the insurer, an underwriter employed by it, testified that if he had known the true marital status of the applicant, a policy of insurance would not have been issued to her. He indicated that the morality of its insureds was of great importance to Erie. He pointed out that in the circumstances of this case, there was a material increase in the risk due to the fact that the usual prohibition against one spouse suing another for tort would not apply where there was no legal marriage between them.

Appellant contended that the use of the name Lola Lane in an application for a policy of automobile liability insurance by a married woman living with, but not married to Eugene M. Lane, was a material misrepresentation that justified a recission of the insurance policy. Erie also contended that appellee made other false warranties in the application justifying a recission.

A misrepresentation by the person insured, in the application for a policy of insurance covering the owner or his automobile against liability or damages, will not affect the validity of the policy, unless the representation relates to some matter which is material to the risk, or prejudicial to the company, or was not made in good faith by the applicant, or unless, by virtue of the terms of the application and policy, it is made an affirmative warranty. 7 Blashfield, *Automobile Law and Practice,* Section 301.4. The representation must also be untrue, must have been made in bad faith, with knowledge of its falsity or recklessly without any knowledge whether it was true or false, with intent to defraud or deceive, and must have been relied on by the insurance company. 7 Blashfield, *supra.* See *Sun Ins. Office v. Mallick,* 160 Md. 71, 153 Atl. 35.

The application for the automobile liability insurance policy was filled out by the agent and was signed "Lola Lane" by the appellee on the second page in the place provided for the applicant's signature. In the space on the first page of the application for the name of the subscriber there was a box checked for "Mrs." which was followed by the name "Lola B. Lane." On the second page of the application, it was indicated that appellee used the automobile 100% of the time (no other person was named as a driver) and that she was married. Other than a space provided for additional remarks, there were no spaces provided for questions and answers regarding the name of the husband and whether appellee was living with or apart from him. Nor was there any inquiry as to the husband's address.

The general rule is that the inquiry directed to the applicant must be reasonably designed to elicit from him information which he possesses material to the risk as a condition precedent to the application of the rule that a failure to disclose may provide a basis for avoidance of the policy. *Harris v. State Farm Mutual Automobile Insurance Co.*, 232 F. 2d 532 (6th Cir. 1956) cert. den. 352 U. S. 827, 1 L. Ed. 2d 49 (1956) ; *Government Employees Insurance Company v. Cain*, 226 F. Supp. 589 (D. Md. 1964). The question in *Harris v. State Farm Mutual Automobile Insurance Co., supra,* was whether the insured made a false representation in his application for the policy of automobile insurance in a negative reply to a question whether he had any physical defect. The insurance company introduced evidence that Harris suffered from epilepsy. Harris contended that epilepsy was not a physical defect, but was a disease. The insurance company contended that it was a physical defect. The insured was never asked if he suffered from epilepsy. The application was not attached, or incorporated in, or referred to in the policy. The Court found that epilepsy was a disease and not a defect. The Court in reversing the lower court and finding in favor of Harris said at page 541 :

> "It is our conclusion that there was no proof that the insured, by any statement in his application, was guilty of fraudulent misrepresentation inducing the contract of insurance; that the statement that the in-

sured had no physical defect was not a part of the insurance contract relied upon by the insurer; * * *."

A problem similar to that in *Harris* was faced in *Government Employees Insurance Company v. Cain, supra.* The insurance company sought to rescind an automobile insurance policy on the ground of misrepresentation. In the application for the policy, it was asked, "Are you or any operator of the automobile physically or mentally impaired? (One eye, leg, arm, paralysis, etc.)." The reply was negative. After an accident involving the wife of the insured, the insurance company learned that the wife, whom the insured had described as the only operator of the car in addition to himself, suffered from epilepsy and that the accident occurred as the result of an epileptic seizure. The court cited the rule that a material misrepresentation made by an applicant for insurance, in reliance upon which a policy is issued to him, renders the policy voidable as against the applicant and all who stand in no better position, whether such misrepresentation be made intentionally, or through mistake and in good faith. The court held that the portion of the question directed to mental impairment was not incorrectly answered by insured, because it was not designed to elicit from him the information which he possessed concerning his wife's epilepsy. The court denied relief to the insurance company. See *State Farm Mutual Automobile Ins. Co. v. West,* 149 F. Supp. 289 (D. Md. 1957), where material misrepresentations were made by the insured in the application, as a result of which the insurer validly rescinded the policy.

The unchallenged silence of owners of a sports car as to whether they contemplated racing was found not to be fraudulent in an application for collision insurance in *Thomas v. Pennsylvania Thresher. & Farm. Mut. Ins. Co.,* 167 So. 2d 10 (Fla. App. 1964) cert. den. 174 So. 2d 31 (Fla. Sp. Ct. 1965). One of the insureds was an experienced insurance man. The insurance company alleged that he should have known that racing a car was material to the risk and that the insurer would not have issued the policy had it known that the car would be raced. The court held that the insurer, through the exercise of reasonable diligence, could have discovered such information by its own efforts and that the existence of the fact that sports

cars are often raced could have been reasonably anticipated by the insurer as the basis for specific inquiries. The court said that at the most the evidence of the insured's experience in insurance raised a suspicion of unethical conduct in not volunteering to point out a possible future use of the car, a contingency which was not inquired into, but it was not sufficient to support the burden of proof.

The pertinent parts of Erie's application for insurance required information as to the applicant's name and marital status. The use of an assumed name in an application for insurance would not in itself constitute a misrepresentation, *Everett v. Standard Acc. Ins. Co.,* 187 Pac. 996 (Cal. App. 1919) (hearing denied by Cal. Sup. Ct. 1920), and in the absence of fraud, the use of an assumed name by appellee would not invalidate any transaction, contract, or obligation into which she entered and would not prevent her from suing or being sued. *Romans v. State of Maryland,* 178 Md. 588, 16 A. 2d 642, cert. den. 312 U. S. 695, 85 L. Ed. 1131; 65 C.J.S., *Names,* Section 9 (1).

In *Everett v. Standard Acc. Ins. Co., supra,* the insurance company defended a claim made upon an accident insurance policy issued by it upon the grounds that the decedent had been guilty of fraudulent misrepresentations and concealment, which resulted in breaches of warranties contained in the application for the policy. Decedent was killed while riding a motorcycle as the result of a collision with an automobile. The concealment asserted related to the failure of the insured to disclose to the company the fact that he had deserted his wife, Jennie B. Cowie, and five children, in an eastern state, and had come to California, taken an assumed name, and contracted a bigamous marriage with the claimant. For a period of twenty-two years before the policy was written, decedent had been known as Francis J. Everett. During that time he lived continuously in one county in California. A jury found for the claimant. The court, in sustaining the judgment on the verdict, held that because the insured had been known as Everett for twenty-two years before the policy was issued, a representation that his name was Everett was not a misrepresentation, although his name before had been Cowie, since a man may lawfully change

his name without resorting to legal proceedings and by general usage or habit acquire another.

Appellee did not misrepresent her marital status. She did not know if she was divorced (she had never received any papers indicating that she was divorced), and the court below found as a matter of fact that she was not divorced, but still married to Clifton Hall. There is nothing in evidence which indicated that she held herself out as being married to Lane. In fact, the evidence demonstrated that she was very careful not to hold herself out as being married to Lane. In the absence of inquiry, her silence on the matter can not be said to be concealment. *Sun Ins. Office v. Mallick,* and *Thomas v. Pennsylvania Thresher. & Farm. Mut. Ins. Co.,* both *supra.*

If appellant was concerned about its insured's moral life, it showed no interest in any activity of appellee which might have affected the risk of insuring her. Under these circumstances, the insurer can not avoid liability on the ground that the statement in the application that insured was married misled insurer and prevented inquiry concerning her mode of living. Cf. *Hickey v. Wisconsin Mut. Ins. Co.,* 238 Wis. 433, 300 N. W. 364 (1941).

The burden was on the insurer to establish the insured's fraud or misrepresentation in an application for insurance, *Sun Ins. Office v. Mallick, supra,* and, ordinarily, whether a representation in an insurance application was true or false, or material to the risk, is for the jury to determine. *Monumental Ins. Co. v. Taylor,* 212 Md. 202, 129 A. 2d 103. The court below, as the trier of the facts, determined that there were no misrepresentations of facts which were known to and intended by appellee to be false and which were made with intent to deceive the insurer, and that, objectively, her statements were not material to the risk and adverse to appellant. There is sufficient evidence in the record to support the court's findings. Accordingly, the judgment will not be disturbed on this contention by the appellant, because the judgment was not clearly erroneous. Maryland Rule 886 a.

Appellant claimed that the statements supplied by appellee in the application. by the terms of the application, were made warranties, and by reason of the falsity of the statements, the

policy was avoided without regard or reference to their materiality to the risk. Since it was found that the representations of appellee with regard to her name and marital status were not false and concealed no information which was within the scope of the application's inquiry, it can not be said that those representations constituted a breach of warranty.

The second allegedly false statement of appellee related to a question in the application which asked "Name of company which last carried your auto insurance." The answer was "None." For the purpose of determining this issue, we shall assume that the representation was warranted. At the trial, appellee, upon cross-examination, admitted that she had been insured by another company before she applied to appellant for insurance. Other than this admission, it appears from the record that the issue of the breach of warranty because of a failure to disclose a prior insurer was raised for the first time on appeal. In both letters of notification of recision, appellant told appellee that "If we had been correctly informed as to your true name and marital background we would not have issued a contract to you." The pleadings made no mention of a breach of warranty or misrepresentation because of the failure to disclose the existence of a prior insurer. Except for the admission on the witness stand, this issue does not appear in the record. The court below in a thoughtful and well written memorandum made no mention of this issue nor did he rule upon it. If appellant had raised the issue during the trial and if the trial judge failed to rule upon it, appellant could have made a motion, at any time prior to the expiration of the time for appeal, for a brief written statement of the court's ruling on this issue. Rule 18 c. Since the question of misrepresentation or breach of warranty as to prior insurance does not plainly appear by the record to have been tried and decided by the lower court, it can not be considered by this Court. Rule 885.

The trial judge in his declaratory judgment included a provision for the payment to appellee's counsel of an attorney's fee of $250. The appropriateness of this action is not contested on this appeal. However, appellee in her brief, in the event the judgment is affirmed, asks us to provide for an additional fee to her counsel for defending this appeal. In Maryland, except

in special circumstances, not here present, the practice has been to require successful parties to pay their own counsel fee. 25 C.J.S., *Damages,* Section 50 a. Cf. *Freedman v. Seidler,* 233 Md. 39, 194 A. 2d 778; *Harry's Tavern, Inc. v. Pitarra,* 224 Md. 56, 166 A. 2d 908.

For the reasons set forth above the judgment will be affirmed.

*Judgment affirmed. Appellant to pay the costs.*