THE NATIONAL LIFE AND ACCIDENT INSURANCE
COMPANY *v.* ETHEL M. GORDON

[No. 765, September Term, 1979.]

*Decided March 6, 1980.*

The cause was argued before GILBERT, C. J., and MELVIN and WEANT, JJ.

*John R. Penhallegon,* with whom were *John G. Prendergast, Jr.,* and *Smith, Somerville & Case* on the brief, for appellant.

*Edward Smith, Jr.,* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

## —*THE LAW*—

A misrepresentation in an application for an insurance

policy or renewal thereof does not, *ipso facto,* permit the carrier to escape liability. This is so because the General Assembly has specifically provided that:

"All statements and descriptions in any application for a life or health insurance policy or annuity contract, or for the reinstatement or renewal thereof, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under such policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued, reinstated, or renewed the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise." Md. Ann. Code art. 48A, § 374.

Ordinarily, what constitutes a material misrepresentation is a question for the trier of fact to resolve. *Peoples Life Insurance Co. v. Jerrell,* 271 Md. 536, 538, 318 A.2d 519, 520 (1974); *Cohen v. American Home Assurance Co.,* 255 Md. 334, 342, 258 A.2d 225, 229 (1969). Only "when the evidence is clear and convincing, or uncontradicted," may the trial judge rule as a matter of law that the misrepresentation is false and material. *Peoples Life Insurance Co. v. Jerrell, supra,* 271 Md. at 538, 318 A.2d at 520; *Continental Casualty Co. v. Pfeifer,* 246 Md. 628, 639, 229 A.2d 422, 427, *cert. denied,* 389 U.S. 832, 88 S. Ct. 101, 19 L. Ed. 2d 91 (1967); *Heidenreich v. Metropolitan Life Insurance Co.,* 213 Md. 286, 295, 131 A.2d 914, 919 (1957); *Monumental Life Insurance Co. v. Taylor,* 212 Md. 202, 210, 129 A.2d 103, 106-07 (1957); *John Hancock*

*Mutual Life Insurance Co. v. Adams,* 205 Md. 213, 220, 107 A.2d 111, 113-14 (1954).

## —*THE INSTANT CASE*—

We are here concerned with whether Judge Martin B. Greenfeld was correct in allowing a jury, in the Superior Court of Baltimore City, to determine the materiality of a misrepresentation in a renewal application for a policy issued by The National Life and Accident Insurance Company (National). Judge Greenfeld ruled that there was a misrepresentation in the application for renewal, but he declined to hold, as a matter of law, that it was material. The jury, after being instructed as to the misrepresentation, concluded that it was not material and rendered a verdict in favor of Ethel M. Gordon, the beneficiary under National's policy on the life of Izza Gordon, her deceased husband.[1]

The record reveals that Mr. Gordon applied to National for a life policy on October 24, 1974.[2] The policy lapsed in March 1975 for non-payment of the premium. The October 1974 application contains the information that Mr. Gordon was treated at Provident Hospital as an outpatient for three weeks in September 1974 for head injuries sustained in an auto accident. The data supplied by Mr. Gordon was "Complete Recovery No Complications." The "Application for Reinstatement"[3] shows:

"6   During the past five years, have you    Yes  No
    (a)  consulted or been treated by a doctor or other practitioner or at a dispensary or clinic.   ✓ __
    (b)  had any disabling illness or surgical operation   __ ✓"

---

1. Mrs. Gordon testified that she paid the premiums on the policy.

2. The policy was actually issued on December 11, 1974.

3. The policy was renewed on July 8, 1975. In the interim period, National, for reasons not wholly apparent from the record, dispatched a second agent to the Gordon home to have an additional questionnaire completed. That document was more detailed in its questions and once again the insured did not allude to the period of hospitalization.

The application required that "full details" be furnished if "any part of . . . No. 6 [is] answered Yes." Written in the space provided is the following:

"Sinai
~~Provident~~ Hospital
Head Injury Auto Accident. Sept., 74
Dr. Lawrence Solomon"

It is that writing that is the omphalos of this litigation.

When Mr. Gordon died in July 1976 as the result of a gunshot wound, National discovered that the application for renewal did not disclose that Mr. Gordon was in Sinai Hospital from February 9, 1975 through February 16, 1975, nor that the medical diagnosis made at that time was "Mallory-Weiss Syndrome,[4] secondary to alcoholism." National refused to pay over the proceeds of the policy to Mrs. Gordon but, instead, tendered to her a return of the premiums paid. She rejected the tender and suit was filed on her behalf against National.

At trial Mrs. Gordon disputed the diagnosis contained in the Sinai Hospital records. She asserted that her husband had never been an alcoholic,[5] and that his period of confinement in Sinai Hospital was because of "a torn esophagus." National's underwriter, on the other hand, averred that had National known of the diagnosis, it would have refused to reinstate the policy. Following the close of the evidence, Judge Greenfeld, as we have seen, found, as a matter of law, that the renewal application contained a misrepresentation. He felt, however, that there was sufficient evidence to make the issue of materiality a question for the jury to decide.

National, in this Court, raises two issues:

1. The trial court erred in not ruling that the failure by the applicant to disclose a hospitalization of eight days for "Mallory-Weiss Syndrome,

---

4. "Mallory-Weiss Syndrome" was defined by National's underwriter as "a varicosity or varicose veins of the lower esophagus."

5. Mrs. Gordon said her "husband once in a while used to take a little wine . . .," but that was the extent of his drinking.

secondary to alcoholism, was material misrepresentation, as a matter of law."
2. The evidence adduced by National of the misrepresentation's being a material fact was uncontradicted and uncontroverted, and, therefore, the court should not have submitted the materiality *vel non* to the jury.

National asserts that the non-disclosure of the period of hospitalization at Sinai was a material fact as a matter of law. To bolster its position National points to *Hofmann v. John Hancock Mutual Life Insurance Co.,* 400 F. Supp. 827 (D. Md. 1975). There Judge Watkins had before him a question of material misrepresentation in a policy application. In granting a summary judgment in favor of the insurer, the judge said:

"Maryland case law affords strong precedent that misrepresentation about alcoholism is, by its very nature, material to the risk. The excessive use of alcohol, a fact that the insurance company did not know, but would have known had Mr. Hofmann revealed his visits to Drs. Johnson and Nakazawa, has been held to be material to the risk as a matter of law in *Mutual Life Ins. Co. v. Mullan,* 107 Md. 457, 468, 69 A. 385, 390 (1908) and *Forwood v. Prudential,* 117 Md. 254, 258, 83 A. 169, 170-71 (1912)." *Id.* at 830.

Seeking to bring itself within the ambit of *Hofmann,* National avers that "the failure to disclose a hospitalization for an eight-day period, where the discharge diagnosis was 'Mallory-Weiss Syndrome, secondary to alcoholism,' establishes a material misrepresentation as a matter of law because of the very nature of such a misrepresentation." National also asserts that evidence depicted Mr. Gordon to be an alcohol abuser, "a binge type drinker."

What National overlooks is that *Hofmann* and the cases cited therein, deal with uncontroverted evidence of alcoholism. The evidence produced by Mrs. Gordon in the case *sub judice* was that Sinai's hospital report was wrong. Mrs. Gordon told the jury that her husband did not abuse alcohol and, in fact, only

drank a "little wine." That, she said, was the extent of his drinking. Mrs. Gordon told the jury that her husband was in Sinai because of a torn esophagus. Her testimony, we think, generated a jury issue. If it believed her instead of the hospital report it could conclude that the misrepresentation was not material, and that had National had the true facts before it, the policy would have been issued. Patently, the jury was not required to believe the hospital record. Those records are not sacrosanct. They have been made by man, and like man, are subject to all of his uncertainties. Although they are admissible in evidence, as are other records made in the normal course of business, they are not unassailable. Mrs. Gordon, in the instant case, successfully challenged the report. The submission to the jury of the question of materiality of the misrepresentation was not error.

*Judgment affirmed.*
*Costs to be paid by appellant.*