**NORTH AMERICAN SPECIALTY IN-SURANCE COMPANY and National Marine Underwriters**

v.

**Warren Kim SAVAGE and Joanna Maxine Carillo.**

**Civil Action No. CCB–95–2891.**

United States District Court,
D.  Maryland.

April 30, 1997.

Christopher D. Buck, Buck, Midgal & Myers, Annapolis, MD, for Plaintiff.

Stuart H. Arnovits, Law Office of Jeffrey J. Silver, Baltimore, MD, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

Plaintiffs North American Specialty Insurance Company ("North American") and National Marine Underwriters ("NMU") have brought a declaratory judgment action against defendants Warren Kim Savage and Joanna Maxine Carillo related to a marine insurance policy issued to Mr. Savage. Cross-motions for summary judgment have been filed. For the reasons stated below, plaintiffs' motion for summary judgment will be granted, and defendant Carillo's motion for summary judgment will be denied.

## BACKGROUND

Mr. Savage contacted NMU in early July 1992 in order to secure marine insurance. (Logan Aff. ¶ 3, Pls.' Mot. Summ. J. Ex. D.) A declaration page was presented to Mr. Savage that required him to disclose whether his driver's license had ever been suspended or revoked; whether he had ever been convicted of a felony, of driving while intoxicated, or of driving under the influence of alcohol; and to state the particulars of any losses or moving traffic violations in the past three years. (Flagship Policy Decl. Page, Pls.' Mot. Summ. J. Ex. A.) Mr. Savage answered "no" to the question whether his license had ever been revoked or suspended, and whether he had ever been convicted of a felony or an alcohol-related driving offense. He also

did not claim that he had experienced any losses in the last three years. (*Id.*) He did disclose two speeding tickets in 1990 and 1991, and a reckless driving violation. (*Id.*) Enclosed in a red outlined box, just above the signature line, was the following statement: "The information above is the basis for this policy. I/we understand that if any of the statements are not true, then there will be no coverage under this policy." (*Id.*) The declaration page was signed by Mr. Savage on August 2, 1992. (*Id.*)

Plaintiffs issued a marine insurance policy to Mr. Savage effective July 30, 1992. On August 22, 1992 Ms. Carillo suffered injuries resulting from a boating accident that occurred while she was a passenger on a boat owned by Mr. Savage, insured by North American, and underwritten by NMU.

Mr. Savage's driving record, pulled as part of the investigation following the accident, indicates that he was convicted on June 22, 1992 of failure to submit to a blood/ breath alcohol test in March 1992 which resulted in a six month suspension of his license. He also had his license suspended in 1987–1988.[1] (Savage Driver Record Service Report, Pls.' Mot. Summ. J. Ex. C.) In addition, he had been involved in an accident in June 1991 that resulted in personal injury. (*Id.*)

Plaintiffs sent several letters to Mr. Savage. The first letter, reserving all of plaintiffs' rights and defenses under the contract, was sent by certified mail on September 28, 1992 and was not claimed. (Pls.' Reply Ex. C.) The second letter was sent October 27, 1992 and enclosed a copy of the first letter. (Pls.' Reply Ex. D.) The third letter, dated November 13, 1992, informed Mr. Savage that, because he failed to reveal two prior driver's license suspensions, his insurance policy was void ab initio. (*See* Pls.' Mot. Summ. J. Ex. G.)

Ms. Carillo filed suit to recover for her injuries. North American and NMU have brought this declaratory judgment action against both Ms. Carillo and Mr. Savage in order to determine whether the policy could

---

1. The pleadings suggest that a private investigator pulled Mr. Savage's driving record on September 14, 1992. It is not clear, however, when

North American or NMU became aware of the contents of the record.

be voided ab initio. Default judgment has been entered against Mr. Savage. The plaintiffs invoke both the diversity and the admiralty jurisdiction of this court. Accordingly, both Maryland and maritime law will be addressed. *See Puritan Ins. Co. v. Eagle Steamship Co. S.A.*, 779 F.2d 866, 872 (2nd Cir.1985) (considering whether admiralty or state law applies in a diversity action).

## ANALYSIS

North American and NMU have moved for summary judgment alleging that the marine insurance policy in this case can be voided *ab initio* because they issued the policy in reliance on a material misrepresentation Mr. Savage made in his application. Ms. Carillo opposes the plaintiffs' motion and has moved for summary judgment. She argues that plaintiffs should not be permitted to avoid their responsibilities under the contract for several reasons:(1) Mr. Savage's driving record was not material to the marine insurance contract; (2) the right of a marine insurer to void a contract *ab initio* where innocent third-parties are injured is against public policy; (3) estoppel principles apply; and (4) plaintiffs failed to exercise good faith in accordance with the doctrine of "Uberrimae Fidei" applicable to marine insurance.

### I. *Material Misrepresentation*

■■■ Generally, insurance policies may be voided *ab initio* when an insurer issued a policy in reliance on a material misrepresentation in the application. *See Fitzgerald v. Franklin Life Ins. Co.*, 465 F.Supp. 527, 534 (D.Md.1979), *aff'd*, 634 F.2d 622 (1980). Ma-

teriality is determined by considering whether, given the circumstances of the case, the information omitted could " 'reasonably have affected the determination of the acceptability of the risk.' "[2] *Hartford Accident and Indem. Co. v. Sherwood Brands, Inc.*, 111 Md.App. 94, 109, 680 A.2d 554, 561 (1996) (quoting *Nationwide Mut. Ins. Co. v. McBriety*, 246 Md. 738, 744, 230 A.2d 81, 84 (1967)), *cert. granted*, 344 Md. 116, 685 A.2d 450 (1996). The misrepresentation must actually have been relied on in issuing the policy or setting the premium in order for it to be material. *See id.* (relying on *Erie Ins. Exch. v. Lane*, 246 Md. 55, 59, 227 A.2d 231, 234 (1967), *overruled in part on different grounds, Cohen v. American Home Assurance Co.*, 255 Md. 334, 258 A.2d 225 (1969)). Summary judgment is appropriate when "there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The materiality of a misrepresentation can be determined as a matter of law "when the evidence is clear and convincing, or uncontradicted." *See Peoples Life Ins. Co. v. Jerrell*, 271 Md. 536, 538, 318 A.2d 519, 520 (1974); *see also National Life and Accident Ins. Co. v. Gordon*, 45 Md.App. 139, 140–41, 411 A.2d 1087, 1088 (1980) (citing cases).

■■■ North American claims that Mr. Savage's failure to disclose that his license had been suspended two times in the past constituted a material misrepresentation warranting avoidance of the policy.[3] During the

---

2. Ms. Carillo argues that material misrepresentations "must be reasonably related to the insurer's economic and business purposes" and that the "insurer must demonstrate objectively the probability of a direct and substantial adverse effect upon losses or expenses.... " (Def.'s Mot. Summ. J. at 2–3.) This is a statutory standard which insurers must satisfy when they seek "to cancel or refuse to underwrite or renew a particular insurance risk" pursuant to § 234A. See Md. Code Ann., Ins. § 234A(a); *Miller v. Insurance Commissioner*, 70 Md.App. 355, 368, 521 A.2d 761, 768, *cert. denied*, 310 Md. 130, 527 A.2d 51 (1987); *Crumlish v. Insurance Commissioner*, 70 Md.App. 182, 190, 520 A.2d 738, 742 (1987). The statute does not abrogate the principle that material misrepresentations render a contract voidable. *See Miller*, 70 Md.App. at 369, 521

A.2d at 768 ("[M]aterial misrepresentations remain as valid reasons for avoiding a contract despite the substantive requirements of § 234A."). A misrepresentation ordinarily will not be "material," however, unless it is "reasonably related to the insurer's economic and business purposes." *Id.* at 368, 521 A.2d at 768.

3. North American's letter of rescission to Mr. Savage dated November 13, 1992 cited Mr. Savage's failure to reveal previous license suspensions as the grounds for voiding the policy. (*See* Pls.' Mot. Summ. J. Ex. G.) Although there may have been other material misrepresentations in the application, the court will focus on the license suspensions.

process of obtaining insurance Mr. Savage answered "no" to the straight forward, unambiguous question, "[h]as your license ever been suspended or revoked?" *See Stumpf v. State Farm Mut. Auto. Ins.*, 252 Md. 696, 707, 251 A.2d 362, 367–68 (1969) (citing *Government Employees Ins. Co. v. Cain*, 226 F.Supp. 589 (D.Md.1964)) (requiring a court to find the question unambiguous before voiding the policy).

Mr. Savage's response amounts to a misrepresentation because his driving record indicates that his license was suspended on at least two prior occasions. On August 4, 1988 his license was suspended for ninety days for driving under revocation or suspension[4]; on June 22, 1992 he was convicted of failing to submit to a blood/breath alcohol test, and his license was suspended for six months. (*See* Savage Driver Record Service Report, Pl.'s Mot. Summ. J. Ex. C.) From the record it appears that Mr. Savage did not have a valid driver's license when he sought and obtained marine insurance from plaintiffs.

Failure to reveal a suspended driver's license, or a history of moving violations, has been considered a material misrepresentation in the context of applications for automobile insurance. *See Southern General Ins. Co. v. O'Keefe*, 275 F.Supp. 107, 109 (D.Md.1967); *West*, 149 F.Supp. at 305; *Erie Ins. Co. v. Insurance Comm'r*, 84 Md.App. 317, 321–22, 579 A.2d 771, 773 (1990) (citing cases). Although a valid driver's license is not required to operate a boat in Maryland, as a matter of policy, North American does not issue marine insurance "IF A CUSTOMER HAS HAD HIS LICENSE REVOKED OR SUSPENDED AND DOES NOT HAVE A CURRENT DRIVERS LICENSE. AUTOMATIC DECLINE." (Underwriting Guidelines at 2, Pls.'s Mot. Summ. J. Ex. E; *see also* Logan Aff. Ex. D ¶ 9; Goodchild Dep. Ex. F

at 12.) This policy appears reasonable given the similarity of skills and risks involved in operating either an automobile or a boat.[5]

Plaintiffs assert that they relied on Mr. Savage's representations on the declaration page in issuing the policy and that if Mr. Savage had disclosed his suspension he would have been denied coverage pursuant to the policy. (*See* Logan Aff. ¶ 11, Pls.' Mot. Summ. J. Ex. D.) The court finds that the withholding of this information affected plaintiffs' decision to insure Mr. Savage; specifically, a policy was issued that otherwise would have been declined. Accordingly, the court concludes as a matter of law that there was a material misrepresentation on the application.

## II. *Right of a Marine Insurer to Invalidate a Policy Ab Initio*

North American and NMU claim that in the event of a material misrepresentation on an application for marine insurance the insurer has the right to void the contract *ab initio*. *See Fitzgerald*, 465 F.Supp. at 534 (explaining the general rule that an insurance contract may be voided for material misrepresentation on an application). Ms. Carillo argues against the insurers' right to void the contract by relying on the strong public policy in favor of compensation of injured third-party victims as evidenced by the Court of Appeals' decision in *Van Horn v. Atlantic Mutual Insurance Co.*, 334 Md. 669, 641 A.2d 195 (1994).

The right of an insurer to void a contract ab initio for a material misrepresentation in an application existed at common law for a variety of insurance contracts. *See id.* at 679, 641 A.2d at 199–200; *see also Hofmann v. John Hancock Mut. Life Ins. Co.*, 400 F.Supp. 827, 829 (D.Md.1975). Unfortunate-

---

**4.** Mr. Savage's driving record indicates that the August 4, 1988 suspension of his license was for "driving under revocation/suspension" in Fairfax County suggesting that his license was suspended at another time in the past. (*See* Savage Driver Record Service Report, Pl.'s Mot. Summ. J. Ex. C.) He also was convicted of the same "driving under revocation/suspension" offense on March 14, 1988 in Prince William County, but the record does not indicate if his license was suspended or revoked as a result.

**5.** The fact that a driver's license may be suspended for a variety of reasons, some less significant than others, does not affect the conclusion that a license suspension can be considered reasonably related to the risks involved in marine insurance. In any event, there is no genuine issue of material fact regarding its materiality in this case, because Mr. Savage's license was suspended for failure to submit to a blood/breath alcohol test.

ly for Ms. Carillo, with the exception of statutorily mandated automobile insurance, the common law right to void a contract appears to have survived the *Van Horn* decision.[6]

In *Van Horn*, the Maryland Court of Appeals held that an insurer's common law right to void *ab initio* and deny coverage to an innocent third-party under an automobile insurance contract, because of an applicant's material misrepresentation in procurement of the policy, had been abrogated by Maryland's statutory scheme for compulsory automobile insurance. *Van Horn*, 334 Md. at 670, 641 A.2d at 199–200. The court found that precluding recovery by injured third parties who had made no misrepresentation would be inconsistent with the statutory and public policy purpose of ensuring continuous insurance coverage for victims of automobile accidents. *Id.*

In reviewing the compulsory auto insurance statutes, the court noted that the legislature had repealed the Maryland Automobile Insurance Plan for Assigned Risks, which expressly provided for rescission when material misrepresentations were made in procuring the policy, and intentionally had not included comparable language in the new statutes preserving the insurer's right to rescission. *Id.*, 641 A.2d at 202. The court concluded that permitting rescission ab initio would be "utterly inconsistent with this legislative purpose." *Id.*

While many of the concerns associated with third party recovery for automobile accidents are also present in the context of marine accidents, the *Van Horn* decision is grounded in interpretation of a particular statutory scheme.[7] It cannot be read as establishing a general policy regarding injured third-party victims, laudable as such a policy might be.[8] In the absence of similar statutory enactments mandating continuous and compulsory coverage for marine insurance, I cannot find that the *Van Horn* decision precludes voiding *ab initio* the marine insurance policy in this case.

### III. *Estoppel.*

The Maryland Court of Appeals has held that "unless the party against whom the doctrine has been invoked has been guilty of some unconscientious, inequitable, or fraudulent act of commission or omission, upon which another has relied and been misled to his injury, the doctrine [of estoppel] will not be applied." *Bayshore Indus., Inc. v. Ziats*, 232 Md. 167, 176, 192 A.2d 487, 492 (1963). Ms. Carillo's arguments that North American and NMU failed to investigate Mr. Savage's application and did not provide timely notice of their decision to void the policy do not satisfy the requirements for application of estoppel in this case.

As a general rule, an innocent third party stands in the same position as the insured when seeking to enforce the provisions of an insurance policy. *See West*, 149 F.Supp. at 307 ("Ordinarily an injured person has no better or different rights under the policy than the insured ....") (citations omitted). Because Mr. Savage did not act in good faith, Ms. Carillo ordinarily would not be permitted to raise the estoppel argument. *See Southern General Ins. Co.*, 275 F.Supp. at 109; *West*, 149 F.Supp. at 307; *Bayshore Indus., Inc.*, 232 Md. at 175, 192 A.2d at 492 (quoting *Price v. Adalman*, 183 Md. 320, 325–26, 37 A.2d 877, 879 (1944)) (indicating party must exercise good faith to raise the doctrine of estoppel). In *West*, however, the court rec-

---

6. Following the Van Horn decision, the Maryland Court of Special Appeals allowed a comprehensive general liability insurance policy to be voided ab initio. *See Hartford Accident and Indem. Co. v. Sherwood Brands, Inc.*, 111 Md.App. at 109, 680 A.2d at 561. The Maryland Court of Appeals granted certiorari, but has not issued an opinion in the case. 344 Md. 116, 685 A.2d 450.

7. The *Van Horn* court relied on other cases that limited their analysis to automobile insurance and stressed their reliance upon legislative intent. *See Van Horn*, 334 Md. at 687–93, 641 A.2d at 204–06.

8. The fact that the *Van Horn* court enforced the insurer's liability to the policy limit of $100,-000.00, as opposed to the statutorily mandated $20,000.00 per person and $40,000.00 per occurrence, does not establish a strong public policy extending to marine insurance. Rather the court relied on the fact that the policy limit had been agreed to by both parties, a premium payment had been made on the basis of $100,000.00 coverage, and other jurisdictions considering the issue had enforced full coverage limits. *Van Horn*, 334 Md. at 695, 641 A.2d at 208.

ognized the possibility that an innocent third party may be excepted from this rule. *West*, 149 F.Supp. at 307. Even assuming Ms. Carillo's case falls within this exception, estoppel is not appropriate because North American and NMU had no duty under the circumstances to investigate the application, and because they notified Mr. Savage of the rescission in a reasonable time and without causing prejudice to the plaintiff.

■ Generally, insurers do not have a duty to investigate insurance applicants and are entitled to believe what an applicant claims to be true.[9] *Clemons v. American Cas. Co.*, 841 F.Supp. 160, 167 (D.Md.1993) ("Maryland law imposes a heavy burden on applicants to provide correct information on their application."); *see also West*, 149 F.Supp. at 302 ("The court is not aware of any legal obligation on the part of an insurance carrier to assume that all applicants are untruthful and dishonest, and that no reliance can be placed upon anything they say.") Where an application contains responses that should have put the insurer on notice, however, the insurer has a duty to investigate and can be charged with notice. *See Clemons*, 841 F.Supp. at 167. "The duty to investigate . . . only exists in extraordinary situations when the insurer is on notice that some type of investigation is necessary" because "a considerable amount of suspicious information" is presented to the insured. *Id.*

■ I cannot find that the information provided in the application was of such a character as to put North American and NMU on notice. *See West*, 149 F.Supp. at 306–07. The disclosure of a reckless driving charge, standing alone, is not enough. *See* Md. Code Ann., Transp. II § 16–206(a)(ii); *Motor Vehicle Administration v. Mohler*, 318 Md. 219, 567 A.2d 929 (1990) (finding that suspending someone's driver's license follow-

ing a single reckless driving conviction is not statutorily mandated or appropriate in the absence of aggravating circumstances).

■ Ms. Carillo also relies on Mr. Savage's failure to provide a specific date for the reckless driving violation; she argues that the plaintiffs should have followed their own established procedure of asking for a copy of an applicant's driving record when the date of the offense is unknown. (*See* Goodchild Dep. at 18, Def.'s Mot. Summ. J. Ex. H.) By doing so, she asserts, they would have discovered the suspensions, not issued the policy, and thereby the accident would not have happened.[10] First, the court is not convinced that the internal policy was violated, because the question that elicited the reckless driving violation response specifically referred to violations within the last three years. Second, while a strict application of the internal policy *may* have, in a "but for" sense, resulted in avoiding the accident, Ms. Carillo has not shown that any of Mr. Savage's answers gave rise to a legal duty to investigate. Accordingly, estoppel is not justified.

■ Ms. Carillo further argues that North American's and NMU's notice to Mr. Savage that the policy was *void ab initio* was not sent within a reasonable time. Upon learning of a material misrepresentation on an application an insurer "must take action to avoid the policy within a reasonable time . . . ." *Fountain & Herrington v. Mutual Life Ins. Co. of New York*, 55 F.2d 120, 125 (4th Cir.1932). In this case it is not clear when the plaintiffs learned of the misrepresentations. Assuming arguendo that they became aware of the misrepresentations when the report was accessed on September 18, 1992, the earliest date provided by the parties, plaintiffs waited approximately two months to notify Mr. Savage.

---

**9.** Ms. Carillo claims that the investigation should have been conducted during the time the application was submitted and before the policy was issued, during what is commonly known as the binder period. Assuming that a binder number was issued in this case, Ms. Carillo has not presented any Maryland case law suggesting that an insurer must conduct an investigation during the binder period. In *Flester v. Ohio Casualty Ins. Co.*, the Court of Appeals explained that a binder is "intended to give temporary protection

pending the investigation of the risk of insurer, *or until the issuance of a* formal policy . . . ." 269 Md. 544, 550, 307 A.2d 663, 666 (1973) (quoting 44 C.J.S. *Insurance* § 49) (emphasis added).

**10.** Ms. Carillo's theory is that "[p]erhaps, if Savage was timely notified of said rescission, he would have not taken his boat on the journey which led to [her] serious injuries." (Pl.'s Opp'n at 7.)

The Fourth Circuit has found a delay of two months between discovering a reason for rescission and the date of actual rescission acceptable. *See Thomas v. Prudential Ins. Co. of America,* 104 F.2d 480, 483 (4th Cir. 1939). In this case the delay was not unreasonable, particularly in light of the fact that the company mailed two letters during the two-month delay stating that they were reserving all of their rights under the policy. Even assuming the delay was unreasonable, Ms. Carillo has not shown that she was prejudiced in any way.[11] *See West,* 149 F.Supp. at 307.

In the context of an insurer disclaiming coverage because of late notice, the Court of Special Appeals has noted that "[a]lleging only 'possible, theoretical, conjectural, or hypothetical prejudice' is not enough. The prejudice cannot be surmised or presumed from the mere fact of delay." *Hartford Accident and Indem. Co.,* 111 Md.App. at 111, 680 A.2d at 562 (quoting *General Accident Ins. Co. v. Scott,* 107 Md.App. 603, 613, 615, 669 A.2d 773, 778 (1996)). Ms. Carillo offers only conjecture that a prompt investigation could have prevented the accident, and has not shown how the two-month delay in notice of rescission to Mr. Savage prejudiced her position.

## IV. *Doctrine of Uberrimae Fidei.*

■ Literally translated the phrase "uberrimae fidei" means "of the utmost good faith." *See In the Matter of Liquidation of Union Indem. Ins. Co.,* 89 N.Y.2d 94, 651 N.Y.S.2d 383, 389, 674 N.E.2d 313, 319 (1996). The parties agree that the doctrine of uberrimae fidei applies to marine insurance contracts. *See Knight v. U.S. Fire Ins. Co.,* 651 F.Supp. 477, 481 (S.D.N.Y.), *aff'd,* 804 F.2d 9 (2nd cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see also Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 316, 48 S.Ct. 512, 513, 72 L.Ed. 895 (1928) ("Insurance policies are traditionally contracts uberrimae fidei. . . .") Both parties claim that the other did not act with the utmost good faith. *See Contractors*

*Realty Co. Inc. v. Insurance Co. of North America,* 469 F.Supp. 1287, 1294 (S.D.N.Y. 1979) (applying the doctrine to both parties); *Prudential Ins. Co. of America v. Ford,* 144 A.2d 234, 237 (Del.Ch.1958) (finding a reciprocal duty between insured and insurer).

■ In discussing the doctrine of uberrimae fidei, the Supreme Court noted that "a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." *Stipcich,* 277 U.S. at 316, 48 S.Ct. at 513; *see also Combs v. Equitable Life Ins. Co. of Iowa,* 120 F.2d 432, 437 (4th Cir.1941); *Contractors Realty Co., Inc.,* 469 F.Supp. at 1289 (citing cases). By making a material misrepresentation on his application, Mr. Savage failed to exhibit the utmost good faith in applying for the marine insurance policy at issue in this case.

■ According to Ms. Carillo, North American and NMU did not exercise the utmost good faith because they failed to investigate Mr. Savage and make a timely notification of rescission of the insurance contract. The company waited a month after the accident, six weeks after the policy was issued, to acquire a copy of Mr. Savage's driving record, and, upon learning of the misrepresentations, waited nearly two months to notify Mr. Savage that the policy was void ab initio. This delay is not indicative of bad faith. "[A]lthough good faith requires that the company act promptly upon disproving the falsity of a representation, it is entitled to a reasonable time within which to investigate the matter to determine what course to pursue." *Fountain & Herrington,* 55 F.2d at 126. Ms. Carillo has not demonstrated that the plaintiffs' delay was unreasonable or that they otherwise failed to exercise good faith. Moreover, she has not shown that she is entitled to raise the doctrine in the absence of good faith on the part of Mr. Savage.

The result in this case is truly unfortunate for Ms. Carillo. Without statutory revision, however, Maryland law does not provide for

---

11. Ms. Carillo also has failed to show that a waiver can be implied from the actions of the plaintiffs in this case, considering the short period of time involved and the plaintiffs' letters reserving their rights.

the protection of innocent victims under these circumstances.[12] Accordingly, the plaintiffs' motion for summary judgment will be granted and the defendant's motion for summary judgment will be denied.

---

12. Prior to the statutory enactments for mandatory automobile coverage and the *Van Horn* decision, avoidance of the contract for material misrepresentation was possible even in the event of serious automobile accidents involving bodily in-

jury and death of an innocent third-party. *See Southern Gen. Ins.,* 275 F.Supp. 107, 109; *West,* 149 F.Supp. at 292 (involving personal injury and one fatality).