MUTUAL BENEFIT INSURANCE CO.

v.

Jeffrey LORENCE, et al.

No. CIV.A. DKC 2000–827.

United States District Court,
D. Maryland.

March 11, 2002.

William Carlos Parler, Jr., Parler and Webber LLP, Towson, MD, for Plaintiff.

William N. Zifchak, Sasscer Clagett and Bucher, Upper Marlboro, MD, Donald A. Clower, Kay M. Clarke, Law Offices of Donald A. Clower, Washington, DC, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this declaratory judgment action are cross-motions for summary judgment. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, both motions will be denied and the complaint will be dismissed.

### I. Background

This complaint arises out of an insurance contract dispute as to whether there is coverage for a dog bite that occurred on February 17, 2000. On that date Defendants, Jeffrey Lorence and Kathy Ann Tippett, owned two pit bulls which were housed at their residence at 26730 Connemara Lane, Mechanicsville, Maryland. Defendants' property was insured by a Mutual Benefit homeowner's policy that was initially issued on August 17, 1998, the date they purchased their house. Lorence and Tippett owned these dogs for approximately four years prior to February 17, 2000, with no reported record of aggression or violence. Lorence and Tippett failed to disclose their ownership of the pit bulls at the time they applied for insurance with Mutual Benefit. The application asked in pertinent part:

9. Does applicant or any tenant have any animals or exotic pets?

Paper No. 20, Ex. B. The answer given was "No" and the application was signed by Lorence and Tippett on August 17, 1998.

At the time of the original application, Mutual Benefit's underwriting guidelines prohibited issuance of a homeowner's poli-

cy to an applicants who owned pit bull dogs. Paper no. 20, Ex. C. (Mutual Benefit contends that statistics and the "inherent viciousness" of pit bulls support its economic and business purpose in adopting the guidelines. Paper no. 20, p. 9.)

The homeowner's insurance coverage was renewed on August 17, 1999, but no further application or renewal questionnaire was required. Mutual Benefit did not send an inspector to the home to verify the application representations made by Lorence and Tippett, either at the time of the original application or at the time of the renewal.

On February 17, 2000, one of Lorence and Tippett's dogs, Buck, attacked Belinda Quade and her two year old son, Michael. Both people were injured and were flown by helicopter to Medstar and Children's Hospitals in Washington, D.C. for treatment. After the attack, Mutual Benefit received notice of the presence of the pit bulls for the first time, through a claim submitted by Lorence and Tippett for indemnification.

In a letter dated March 15, 2000, Mutual Benefit notified Lorence and Tippett that this declaratory judgment action would be filed, to seek a ruling that it owed no duty to defend or indemnify based on the alleged material misrepresentation in the policy application. The complaint was filed in this court on March 23, 2000 against Lorence, Tippett and the Quades.[1] By notice dated May 5, 2000, Mutual Benefit also notified Lorence and Tippett that the company was cancelling their homeowner's insurance policy, on the ground that the company does not have a rate that "contemplates an insured misrepresentation of material fact", effective June 21, 2000, and would refund the "excess paid premium above the earned premium for

the expired term." Paper No. 23, Ex. 7. Mutual Benefit has refunded the premiums paid for the period June 21, 2000 through August 17, 2000.

Neither party has instituted a proceeding before the Maryland Insurance Commissioner concerning the underwriting standards in effect at the time of the original policy or its renewal. As will be discussed below, there are proceedings before the Commissioner presently concerning pit bull policies.

## II. Standard of Review

■ While a federal court is authorized to issue a declaratory judgment under 28 U.S.C. § 2201 (1994), it is not obligated to do so. Rather, there are circumstances in which the court may properly exercise its discretion not to declare the rights and responsibilities of the parties before it. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir.1996), quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), states:

> "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."

■ The generally applicable considerations guiding a district court in deciding whether to entertain a declaratory judgment action are whether the relief sought will serve a useful purpose in clarifying

---

**1.** Federal jurisdiction is grounded on diversity of citizenship, with the amount in controversy exceeding $75,000. The parties agree that Maryland law applies.

and settling the legal relations in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Aetna Casualty & Surety Co. v. Ind–Com Elec. Co.,* 139 F.3d 419, 422 (4th Cir.1998) (quoting *Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321 (4th Cir.1937)). In addition, the court may consider:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law."

*Mitcheson v. Harris,* 955 F.2d 235, 237–40 (4th Cir.1992) (quoted in *Ind–Com Elec.,* 139 F.3d at 422). In some cases, the declaratory judgment action is "used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Ind–Com Elec.,* 139 F.3d at 422, quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 377 (4th Cir.1994).

■ While the most common circumstance justifying a district court's dismissal of a declaratory judgment action is the pendency of a parallel state court action, that circumstance is not a necessary prerequisite:

> [A] district court does not per se overstep the bounds of its discretion when it

dismisses a declaratory judgment action in the absence of a pending parallel state court proceeding. Rather, such dismissal is within the district court's discretion, and that discretion is not abused so long as the factors which we have enumerated to guide district courts in this determination weigh in favor of denying declaratory relief.

*Ind–Com Elec.,* 139 F.3d at 424.

### III. Analysis

■ Mutual Benefit asserts that the homeowner's policy in question is void *ab initio* because Lorence and Tippett's failure to disclose their ownership of pit bulls constitutes a material misrepresentation upon which Mutual Benefit relied when issuing the policy. The court might well be able to issue a declaration as to some of the run of the mill insurance contract issues. Mutual Benefit defends its underwriting standards, however, on their merits and seeks, in part, a declaration that the standard applicable to pit bull ownership legitimately serves its business and economic purposes. Paper No. 20, p. 9. Defendants argue that the policy of refusing to insure pit bull owners is discriminatory under Maryland Insurance Code, § 27–501(a)(1), which prohibits an insurer from canceling "based wholly or partly ... for any arbitrary, capricious, or unfairly discriminatory reason." Paper No. 23, p. 7–10. They argue that the underwriting standard prohibiting insurance of pit bull owners is arbitrary and discriminatory as to persons who own pit bulls, under § 27–501(a)(1), and it has no reasonable relationship to the insurer's legitimate economic and business purposes.[2]

---

**2.** Defendants also assert that because the policy questionnaire was filled out by a third party and they did not read it before signing it, they did not know that the application

stated that they did not own any animals and, thus, the misrepresentation was innocent and fraud did not occur. Third, Lorence and Tippett argue that even if they made a material

As cogently synthesized in *North American Specialty Ins. Co. v. Savage,* 977 F.Supp. 725, 728 (D.Md.1997):

Generally, insurance policies may be voided *ab initio* when an insurer issued a policy in reliance on a material misrepresentation in the application. *See Fitzgerald v. Franklin Life Ins. Co.,* 465 F.Supp. 527, 534 (D.Md.1979), *aff'd,* 634 F.2d 622 (1980). Materiality is determined by considering whether, given the circumstances of the case, the information omitted could " 'reasonably have affected the determination of the acceptability of the risk.' " *Hartford Accident and Indem. Co. v. Sherwood Brands, Inc.,* 111 Md.App. 94, 109, 680 A.2d 554, 561 (1996) (quoting *Nationwide Mut. Ins. Co. v. McBriety,* 246 Md. 738, 744, 230 A.2d 81, 84 (1967)), *cert. granted,* 344 Md. 116, 685 A.2d 450 (1996). The misrepresentation must actually have been relied on in issuing the policy or setting the premium in order for it to be material. *See id.* (relying on *Erie Ins. Exch. v. Lane,* 246 Md. 55, 59, 227 A.2d 231, 234 (1967), *overruled in part on different grounds, Cohen v. American Home Assurance Co.,* 255 Md. 334, 258 A.2d 225 (1969)). Summary judgment is appropriate when "there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202. 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The materiality of a misrepresentation can be determined as a matter of law "when the evidence is clear and convincing, or uncontradicted." *See Peoples Life Ins. Co. v. Jerrell,* 271 Md. 536, 538, 318 A.2d 519, 520 (1974); *see also National Life and Accident Ins. Co. v. Gordon,* 45 Md.App. 139, 140–41, 411 A.2d 1087, 1088 (1980) (citing cases).

In addition, as Judge Blake noted in a footnote, a misrepresentation ordinarily will not be material unless it is reasonably related to the insurer's economic and business purposes, as required by the Maryland Insurance Code. *Id.,* 977 F.Supp. at 728, n. 2.

The Maryland Insurance Code makes clear that only the Insurance Commissioner has the authority to determine compliance with § 27–501(a), in the first instance. Subsection (h) provides that the Commissioner may request an insurer to file a copy of its underwriting standards, and the Commissioner may review them to ensure compliance with "this article." MD. CODE ANN., INS. § 27–501(h) (1997). Alternatively, an insured may ask the Commissioner to review a cancellation or refusal to renew. § 27–501(f). At a hearing before the Commissioner, the burden is on the insurer to justify the refusal to underwrite. § 27–501(g). If the Commissioner finds that the refusal to underwrite violates § 27–501, the Commissioner "may ... order the insurer to accept the risk." § 27–505(a). A party to the hearing or proceeding may then appeal to the appropriate Circuit Court in accordance with § 2–215. § 27–505(b).

The Insurance Representative testified as to the practical application of these code provisions:

misrepresentation, the insurance policy in effect was a new contract which began on the renewal date, August 17, 1999, and, as no renewal questionnaire was sent, Mutual Benefit cannot establish that it issued the renewal policy in reliance upon any alleged misrepresentation. Finally, Lorence and Tippett argue

that even if Mutual Benefit does have adequate grounds to cancel the policy under § 21–501(a)(2), Mutual Benefit has waived that right by failing to promptly refund all of the defendants' premium payments for the entire period dating from August 17, 1998.

There is no requirement that a company submit underwriting standards to the Insurance Commissioner prior to their use. The statute requires that the carrier submit them when the Insurance Administration requests them.

Paper No. 23, Ex. 2, p. 44.

There is no parallel state court proceeding pending between the same parties. There are, however, administrative proceedings pending before the Maryland Insurance Commissioner concerning underwriting policies about pit bulls. According to the deposition testimony of Mr. Santiago, the Insurance Commissioner has stayed any consideration of those policies pending the outcome of this action. Paper No. 23, Ex. 2, p. 90. Unfortunately, that result is backward. Maryland law has provided a comprehensive administrative mechanism for determination of the permissible underwriting guidelines in conformity with Maryland law. For the Insurance Commissioner to await the outcome of this action, which has entirely bypassed the administrative procedure, flies in the face of the factors guiding this court's discretion. The state's interest in having the issues concerning insurance underwriting standards decided in state courts is extremely strong. The nature of the material that can be considered by the Insurance Commissioner is much better suited to the economic and policy determination to be made regarding coverage of pit bulls than is the meager record in this court, which is nearly barren concerning the underwriting risks associated with pit bulls. Permitting this action to continue (particularly if the factual issues cannot be decided on summary judgment, and a trial must be scheduled) will result in unnecessary entanglement. While it cannot be said that Mutual Benefit is using this federal case as a device for procedural fencing, there appear to be avenues within the Maryland administrative and judicial structure to resolve the underwriting policy issues as well as the legal issues of misrepresentation and rescission.

Accordingly, because both parties assert that resolution of this case will require a determination of whether Mutual Benefit's underwriting standard refusing to insure risks that include pit bulls complies with § 27–501(a) of the Maryland Insurance Code, this court declines to exercise jurisdiction under 28 U.S.C. § 2201 and the complaint will be DISMISSED. A separate order will be entered.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this ___ day of March, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. The motions of Mutual Benefit Insurance Company and Jeffrey Lorence and Kathy Ann Tippett for summary judgment BE and the same hereby ARE, DENIED;

2. The complaint of Mutual Benefit Insurance Company for a declaratory judgment BE, and the same hereby IS, DISMISSED; and

3. The clerk is directed to transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.